Dylan Hackett (SBN 329339)
**THE HACKETT LAW FIRM**
P.O. Box 330168
San Francisco, CA 94133
Telephone: (415) 410-9931
Email: dylanhackett@hackettfirm.com

*Attorney for Plaintiff Hanna Gebregzi*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HANNA GEBREGZI,<br><br>Plaintiff,<br><br>vs.<br><br>KAISER FOUNDATION HOSPITAL,<br>D/B/A KAISER PERMANENTE<br>OAKLAND MEDICAL CENTER,<br>ANA HOUSE, AND LIONEL HOYTE,<br><br>Defendants. | Case No. 4:24-cv-06322-JSW<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT KAISER FOUNDATION HOSPITALS' MOTION FOR SUMMARY JUDGMENT**<br><br>Date:  July 24, 2026<br>Time:  9:00 a.m.<br>Judge:  Hon. Jeffrey S. White<br>Dept.:  Courtroom 5, 2nd Floor |

*(vertical left margin)* **THE HACKETT LAW FIRM** P.O. Box 330168, San Francisco, CA 94133 Telephone:(415) 410-9931

PLAINTIFF'S OPPOSITION TO DEFENDANT KAISER FOUNDATION HOSPITALS' MOTION FOR SUMMARY JUDGMENT

THE HACKETT LAW FIRM
P.O. Box 330168, San Francisco, CA 94133
Telephone:(415) 410-9931

## Table of Contents

*I. INTRODUCTION*..................................................................................................................**3**

*II. FACTUAL BACKGROUND*.................................................................................................**5**

    **A. Plaintiff's Employment and the Oakland PACU Environment** .....................................**5**

    **B. Ana House's Comments About Plaintiff's Tigray Heritage and Advocacy** ...................**6**

    **C. Plaintiff's Patient Safety and Harassment Complaints and Management's Response** .................**6**

    **D. The February 2024 Incidents and Plaintiff's Paid Administrative Leave** .......................**7**

    **E. The Investigation, Discipline, and Plaintiff's Medical Leave** ........................................**8**

    **F. The Richmond Placement and Return to Oakland**...........................................................**9**

    **G. Plaintiff's Return to Oakland and the June 13, 2025 Medication Incident**....................**9**

    **H. The June 16, 2025 Administrative Leave and Termination**.........................................**10**

*III. LEGAL STANDARD* ....................................................................................................**10**

*IV. ARGUMENT* ................................................................................................................**11**

    **A. DEFENDANT'S SEPARATE STATEMENT SHOULD NOT BE TREATED AS A SUBSTITUTE FOR RULE 56 PROOF.** .............................................................................**11**

    **B. PLAINTIFF HAS RAISED TRIABLE ISSUES ON HER FEHA HARASSMENT CLAIM.** ...........................**12**
        1. Applicable Law ....................................................................................................12
        2. Evidence Supporting Plaintiff ..............................................................................12
        3. Why Defendant Has Not Met Its Burden...............................................................14
        4. Triable Issues Require Jury Resolution .................................................................14

    **C. GENUINE DISPUTES OF MATERIAL FACT PRECLUDE SUMMARY JUDGMENT ON THE FEHA DISCRIMINATION CLAIM.** ...............................................................**15**
        1. Applicable Law ....................................................................................................15
        2. Evidence Supporting Plaintiff: Competent Performance .......................................15
        3. Evidence Supporting Plaintiff: Discriminatory Motive .........................................16
        4. Why Defendant Has Not Met Its Burden...............................................................17
        5. Triable Issues Require Jury Resolution .................................................................17

    **D. PLAINTIFF'S RETALIATION CLAIM DOES NOT FAIL AS A MATTER OF LAW.** ...................................**18**
        1. Applicable Law ....................................................................................................18
        2. Evidence Supporting Plaintiff ..............................................................................18
        3. Why Defendant Has Not Met Its Burden...............................................................19
        4. Triable Issues Require Jury Resolution .................................................................20

    **E. TRIABLE ISSUES EXIST ON PLAINTIFF'S WORKPLACE DEFAMATION CLAIM.** ...............................**20**
        1. Applicable Law ....................................................................................................20
        2. Evidence Supporting Plaintiff ..............................................................................20
        3. Why Defendant Has Not Met Its Burden...............................................................21
        4. Triable Issues Require Jury Resolution .................................................................22

PLAINTIFF'S OPPOSITION TO DEFENDANT KAISER FOUNDATION HOSPITALS' MOTION FOR SUMMARY JUDGMENT

**F. PLAINTIFF'S CONSTRUCTIVE DISCHARGE AND CONSTRUCTIVE TERMINATION CLAIMS SURVIVE TO THE EXTENT THEY REFLECT WRONGFUL TERMINATION.**.................................................................... **22**

**G. PLAINTIFF'S BREACH OF CONTRACT CLAIM RAISES TRIABLE ISSUES.** ......................................... **22**

    1. Applicable Law ................................................................................................................ 22

    2. Evidence Supporting Plaintiff and Why Defendant Has Not Met Its Burden ................................ 23

    3. Triable Issues Require Jury Resolution ...................................................................................... 23

**H. PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES REQUIRES NO SEPARATE DISPOSITION AT THIS STAGE.** .......................................................................................................................................... **24**

***V. CONCLUSION*** ..................................................................................................................................... ***24***

**CASES**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ............................................................... 11

*Bailey v. San Francisco District Attorney's Office*, 16 Cal. 5th 611, 635 (2024) ...................................... 12

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ....................................................................... 10

*Chuang v. University of California Davis, Board of Trustees*, 225 F.3d 1115, 1127 (9th Cir. 2000) ...................... 15

*Cordova v. State Farm Insurance Companies,* 124 F.3d 1145, 1149 (9th Cir. 1997 ............................................ 16

*Coszalter v. City of Salem*, 320 F.3d 968, 977 (9th Cir. 2003) .................................................................... 19

*Davis v. Team Electric Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) ............................................................... 11

*Detabali v. St. Luke's Hospital*, 482 F.3d 1187, 1189 (9th Cir. 2007) .......................................................... 22

*Flores v. City of Westminster*, 873 F.3d 739, 749 (9th Cir. 2017) ............................................................... 18

*Guz v. Bechtel National, Inc.*, 24 Cal. 4th 317, 355 (2000) ..................................................................... 15

*Noel v. River Hills Wilsons, Inc.*, 113 Cal. App. 4th 1363, 1370 (2003). ...................................................... 20

*Opara v. Yellen*, 57 F.4th 709, 721 (9th Cir. 2023) ............................................................................... 15

*Porter v. California Department of Corrections*, 419 F.3d 885, 895 (9th Cir. 2005) ......................................... 19

*Ramirez v. Fox Television Station, Inc.*, 998 F.2d 743, 748 (9th Cir. 1993) .................................................. 23

*Weil v. Citizens Telecom Services Co., LLC*, 922 F.3d 993, 1000 (9th Cir. 2019) ............................................. 11

*Zetwick v. County of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) .................................................................... 12

**STATUTES**

Fed. R. Civ. P. 56(a). ................................................................................................................... 10

FEHA § 12940(h) ......................................................................................................................... 18

Labor Management Relations Act, 29 U.S.C. § 185(a) ............................................................................ 22

**OTHER AUTHORITIES**

Cal. Civ. Code § 47(c) ................................................................................................................... 20

Cal. Code Regs., tit. 2, § 11021 ...................................................................................................... 18

California Government Code § 12940(h) ............................................................................................. 18

Civil L.R. 56-2(a) ....................................................................................................................... 11

THE HACKETT LAW FIRM
P.O. Box 330168, San Francisco, CA 94133
Telephone:(415) 410-9931

# I. INTRODUCTION

KFH seeks summary judgment by asking the Court to treat KFH's own disciplinary labels, investigation conclusions, and patient-complaint summaries as established facts. Rule 56

requires the opposite. At this stage, the evidence must be viewed in Plaintiff Hanna Gebregzi's favor, all reasonable inferences must be drawn for Plaintiff, and credibility disputes must be reserved for the jury. When that standard is applied, this case cannot be resolved as a matter of law.

The record is not a one-incident record and it is not a clean performance case. It is a cumulative record of protected complaints, escalating discipline, disputed investigations, a privacy breach, denial of union representation, and termination while this lawsuit was pending. KFH's motion depends on separating those events from each other. Plaintiff's claims depend on what Rule 56 requires the Court to consider: the totality of the evidence and the reasonable inferences that flow from it.

That evidence includes direct and circumstantial proof of discriminatory and retaliatory motive. House compared Plaintiff's Tigray heritage and human-rights advocacy to Jewish people during the Holocaust, called Plaintiff's advocacy "a joke," described Plaintiff as "toxic" and "difficult" after Plaintiff complained, participated in discipline despite being a subject of Plaintiff's complaints, and helped advance disciplinary actions based on disputed allegations. The record also contains evidence that Plaintiff requested union representation on June 16, 2025, that House admitted Plaintiff asked for a union representative more than once, and that the video of the encounter shows Hoyte telling Plaintiff she did not need a union representative and that "Nurses are not union."

KFH also relies on a February 12, 2024 recording that a later HR letter found violated Kaiser Permanente policy, while the same letter stated that Plaintiff's conduct captured in that recording had already been addressed in the December 2, 2024 discipline. A reasonable jury could view that evidence, together with the one-sided discipline that followed, as selective enforcement, pretext, and retaliation. Likewise, KFH relies heavily on the June 13, 2025 morphine incident, but the record reflects that Flowers pulled the medication, the anesthesiologist was present at bedside and verbally approved the titration approach, the infant remained stable and required no emergency protocol, and no one else was disciplined.

THE HACKETT LAW FIRM
P.O. Box 330168, San Francisco, CA 94133
Telephone:(415) 410-9931

PLAINTIFF'S OPPOSITION TO DEFENDANT KAISER FOUNDATION HOSPITALS' MOTION FOR SUMMARY JUDGMENT

THE HACKETT LAW FIRM
P.O. Box 330168, San Francisco, CA 94133
Telephone:(415) 410-9931

KFH asks the Court to credit its investigations over Plaintiff's testimony and documentary evidence. But the central questions in this case are credibility questions: whether KFH's stated reasons were honest or pretextual, whether the investigations were neutral or outcome-driven, whether comparable employees were treated differently, whether the defamatory statements were made with malice, whether KFH followed the CBA and its own procedures, and whether the adverse actions were caused by Plaintiff's protected complaints and protected identity. Those questions belong to the jury. Plaintiff therefore respectfully requests that the Court deny KFH's Motion for Summary Judgment, or in the alternative Summary Adjudication, in its entirety.

## II. FACTUAL BACKGROUND

### A. Plaintiff's Employment and the Oakland PACU Environment

KFH hired Plaintiff Hanna Gebregzi as a Staff Nurse II in July 2016 at its Richmond Medical Center Emergency Department. (Def.'s Separate Statement ("SS") No. 1.) After six years at Richmond, Plaintiff transferred in April 2022 to the Post-Anesthesia Care Unit ("PACU") at KFH's Oakland Medical Center, where she retained her RN position. (SS No. 2.) Throughout her employment, Plaintiff was a member of the California Nurses Association and covered by its collective bargaining agreement with KFH. (SS No. 4.)

Plaintiff is a Black woman of Ethiopian descent and a human-rights advocate on issues affecting Ethiopia and, specifically, the Tigray region. (SS No. 5.) She co-hosts a YouTube channel, "Horizon Free Media," through which she advocates on Ethiopian human-rights and political issues. (Id.) This identity and advocacy were known to KFH management in Oakland, including the managers whose conduct and disciplinary decisions are at issue.

The management structure at the Oakland PACU changed shortly after Plaintiff's arrival. Ana House became Plaintiff's Nurse Manager in August 2022. (SS No. 3.) Laura Jefferson joined as Assistant Nurse Manager in 2023, and Lionel Hoyte replaced the prior Director in approximately October 2023. (Id.) Hoyte arrived at KFH following a tenure at UCSF during which nurses filed a formal vote of no confidence, and a union newsletter described his

THE HACKETT LAW FIRM
P.O. Box 330168, San Francisco, CA 94133
Telephone:(415) 410-9931

management as creating a "hostile work environment" through "excessive and intimidating investigatory meetings." (Hoyte Depo. at 40:1-43:20; Hoyte Depo. at Ex. 1.)

**B. Ana House's Comments About Plaintiff's Tigray Heritage and Advocacy**

Early in Plaintiff's tenure under House, House made a comment comparing the Tigray people to "the black Jews" in the context of discussing the Holocaust and genocide. (Plf. Depo. Vol. III, 624:19-625:10.) The remark was directed at Plaintiff's Ethiopian ethnic identity and her human-rights advocacy. (Id.) House then stated, "I'm just joking," and laughed, but Plaintiff reasonably understood the comment as demeaning her people, her protected identity, and her advocacy work. (Id.) House also told Plaintiff on at least one occasion that "it's a joke to see you as a human right advocate." (Plf. Depo. Vol. III, 625:18-20.) House later communicated the same dismissive view of Plaintiff's advocacy to Laura Jefferson. (Plf. Depo. Vol. III, 625:21-626:1.)

**C. Plaintiff's Patient Safety and Harassment Complaints and Management's Response**

Plaintiff repeatedly raised concerns about patient safety, management misconduct, favoritism, and CBA violations in the Oakland PACU. (SS No. 17.) In October 2023, Plaintiff emailed House and union representative Ben Sizemore raising concerns about Laura Jefferson's lack of PACU experience and the resulting safety risks, writing: "I believe ANM Laura Jeferson has never worked or had experience in a PACU. When she is working as an RHC, it feels like we are drowned in a shipwreck in the middle of the ocean." (Pl.'s Ex. 42 at 0053.) In November 2023, Plaintiff organized and participated in a staff meeting with Director Hoyte in which multiple nurses raised concerns about Jefferson's supervision. (SS No. 17.)

The record also reflects contemporaneous union concern that management was responding to criticism through administrative leave. At the March 2024 fact-finding meeting, union representative Ben Sizemore stated that "it is uncommon for a small department to place four nurses on PAL in one year" and that placing Plaintiff on PAL on the day she was supposed to meet with HR was "a red flag." (Pl.'s Ex. 42 at 0003.) That evidence supports Plaintiff's theory that KFH was not merely responding to isolated misconduct, but was building a disciplinary record against nurses who challenged management.

THE HACKETT LAW FIRM
P.O. Box 330168, San Francisco, CA 94133
Telephone:(415) 410-9931

Plaintiff also submits a declaration stating that, throughout her employment, she experienced what she understood as a retaliatory "paper trail" after advocating for patient safety and institutional integrity; that in February 2024 she reported workplace misconduct and safety concerns; that after filing this lawsuit she experienced written warnings, harassment, intimidation, false accusations, security escort, badge confiscation, a second administrative leave, and escalated termination actions; and that other employees she reported were not held to the same standards. (Gebregzi Decl. ¶¶ 2, 4-7.)

**D. The February 2024 Incidents and Plaintiff's Paid Administrative Leave**

On February 12, 2024, a verbal confrontation occurred between Plaintiff and CNA Yeshamu Ayalew, also of Ethiopian descent. (SS No. 18.) Ayalew contacted House following the confrontation and provided a video recording. (SS Nos. 22-23.) A later May 5, 2025 HR letter from Claudia Shafer states that there was "sufficient evidence that the video recording taken on February 12, 2024, violates Kaiser Permanente policies," while also stating that Plaintiff's actions captured in that recording were addressed in the December 2, 2024 discipline. (Pl.'s Ex. 42 at 0025.) A reasonable jury could view KFH's reliance on a policy-violating recording, while using that same event to discipline Plaintiff, as evidence of selective enforcement.

Two days later, on February 13, 2024, Plaintiff discovered that her private email account had been accessed through a Kaiser computer terminal without her authorization, and an email containing complaints she had previously drafted was sent to House and Assistant Nurse Manager Suzette Smith. (SS No. 25.) A printed copy of the same email was found in a break room by an environmental services employee. (SS No. 26.) Plaintiff reported the privacy breach to HR and Compliance. (Pl.'s Ex. 22 at 1.)

On February 27, 2024, Plaintiff left her shift early after what she described as a verbal attack by House at the nursing station. (Pl.'s Ex. 24 at 1.) Management characterized the event as "job abandonment." But Plaintiff's March 2024 fact-meeting notes state that Plaintiff reported being verbally attacked in front of Sabrina, a unit assistant, and Laura Jefferson, and that Plaintiff

PLAINTIFF'S OPPOSITION TO DEFENDANT KAISER FOUNDATION HOSPITALS' MOTION FOR
SUMMARY JUDGMENT

THE HACKETT LAW FIRM
P.O. Box 330168, San Francisco, CA 94133
Telephone:(415) 410-9931

also reported the incident to OR manager Harold Falcasantos and ANM Aster before leaving. (Pl.'s Ex. 42 at 0002.) On March 7, 2024, KFH placed Plaintiff on paid administrative leave pending investigation of workplace harassment and job abandonment. (SS No. 10.) That same day, Plaintiff emailed HR again about the hostile environment. (Pl.'s Ex. 24 at 1.) KFH engaged regional HR Investigator Helen Yoon to investigate. (SS No. 33.)

**E. The Investigation, Discipline, and Plaintiff's Medical Leave**

At the March 27, 2024 fact-finding meeting, KFH did not provide Plaintiff advance written notice of all allegations against her before the meeting. (House Depo. at 55:1-58:20.) House, who was both a subject of Plaintiff's complaints and a participant in the discipline recommendation, attended the fact-finding meeting in a supervisory capacity. (House Depo. at 53:1-55:20.) Those facts matter because KFH now asks the Court to treat the investigation's conclusions as neutral and conclusive, even though the process itself is disputed.

On December 4, 2024, Investigator Yoon issued closure letters finding Plaintiff's complaints unsubstantiated and substantiating several allegations against Plaintiff. (SS Nos. 36-37.) On December 2, 2024, KFH issued Plaintiff a one-day suspension and a verbal warning based on the February 2024 incidents and four patient care complaints. (SS Nos. 55, 58.) Plaintiff disputed the patient care complaints and documented concern that "four patients suddenly complained about me after I was placed on PAL." (Pl.'s Ex. 24 at 1; Pl.'s Ex. 42 at 0003.) One patient complaint involved a visitor Plaintiff described as a Kaiser employee and "Ana House's friend." (Pl.'s Ex. 42 at 0003.)

Following the suspension, Plaintiff requested medical leave citing PTSD resulting from the investigation and work environment. (SS No. 6.) Her treating psychologist, Dr. Kristin Kopacz, diagnosed Plaintiff with Other Stressor Related Disorder, Panic Disorder, and later Major Depressive Disorder following termination. (Kopacz Depo. at 39:1-42:20; 70:1-71:20.) Dr. Kopacz's formal accommodation letter confirmed Plaintiff should not enter the Oakland facility during her January through April 2025 treatment period. (Kopacz Depo. at 61:1-62:20.)

PLAINTIFF'S OPPOSITION TO DEFENDANT KAISER FOUNDATION HOSPITALS' MOTION FOR SUMMARY JUDGMENT

KFH approved the medical leave and granted Plaintiff a temporary placement at Kaiser Richmond through its Transitional Work Program. (SS No. 8.)

**F. The Richmond Placement and Return to Oakland**

Plaintiff worked at the Richmond Recovery Department from February 10 through April 23, 2025, under Richmond's Director of Perioperative Services, Ivy So, a manager with no prior involvement in Oakland's discipline of Plaintiff. (SS No. 70.) Three patient care complaints were submitted during this placement through Press Ganey, an independent third-party survey vendor. (SS No. 64.) Plaintiff could not specifically recall the incidents described in these complaints. (SS Nos. 65-66.) But none of the complaints triggered a Rapid Response or emergency protocol, and the Richmond manager who issued the written warning had no connection to the Oakland management chain Plaintiff had accused of harassment and retaliation. (SS No. 70; Decl. So.)

**G. Plaintiff's Return to Oakland and the June 13, 2025 Medication Incident**

Plaintiff returned to the Oakland PACU on or about May 15, 2025. (SS No. 12.) On the first day back, Laura Jefferson observed Plaintiff near a patient and reported cell phone use, which Plaintiff denied. (SS No. 39.) The same afternoon, Plaintiff left early because she did not feel safe. (SS No. 41.) Between May 15 and June 13, 2025, four more incidents were reported by management. (SS Nos. 39-47, 72-77.) The timing matters: Plaintiff returned to the same Oakland chain of command she had accused, and the disciplinary process escalated almost immediately.

The most consequential incident was the June 13, 2025 medication incident involving a three-month-old infant. KFH contends Plaintiff administered morphine to the infant in two half-doses rather than a single prescribed dose and falsely documented the administration. (SS Nos. 74-75.) The record, however, raises substantial questions about that characterization. Jennifer Flowers, the orienting charge nurse, pulled the medication from the Pyxis system because Plaintiff had a finger injury that prevented her from accessing the drawer. (House Depo. at 93:1-94:20.) Plaintiff administered the medication incrementally with the anesthesiologist, Dr. Mattas, present at the bedside, and Dr. Mattas verbally approved the titration approach. (Plf. Depo. Vol. III, 604:1-25.) The infant remained stable and pain-free throughout recovery, was not subjected

THE HACKETT LAW FIRM
P.O. Box 330168, San Francisco, CA 94133
Telephone:(415) 410-9931

PLAINTIFF'S OPPOSITION TO DEFENDANT KAISER FOUNDATION HOSPITALS' MOTION FOR SUMMARY JUDGMENT

to any emergency protocol, and was cleared by the anesthesiologist for transfer to the pediatric floor as originally planned. (Plf. Depo. Vol. III, 663:1-20; House Depo. at 95:1-20.)

House admitted she did not know whether the infant had remained stable and did not interview the infant's mother. (House Depo. at 95:1-20; 105:1-10.) No one else, including Flowers, was disciplined for the incident. (House Depo. at 105:11-20.) A reasonable jury could therefore conclude that KFH overstated the incident, omitted exculpatory facts, and applied discipline selectively against Plaintiff.

**H. The June 16, 2025 Administrative Leave and Termination**

On June 16, 2025, KFH placed Plaintiff on a second paid administrative leave pending investigation of the May-June incidents. (SS No. 11.) When Director Hoyte attempted to deliver the notice, Plaintiff asked for her union representative. Hoyte testified he had no recollection of Plaintiff requesting a union representative. (Hoyte Depo. at 70:1-20.) But House testified that Plaintiff asked for a union representative "more than once." (House Depo. at 154:1-155:20.) Plaintiff also testified that she told management she needed a union representative and that Hoyte said she did not need one. (Pl.'s Ex. 41, Gebregzi Depo. Vol. III 554:1-21.) Security was called, and Plaintiff was escorted out of the building. (SS No. 49.)

KFH scheduled an investigative interview for June 27, 2025. (SS No. 78.) Plaintiff testified that, around that time, Richmond and Oakland were both trying to investigate her and that she did not recall learning in advance that an Oakland investigatory interview had been scheduled for June 27, 2025. (Pl.'s Ex. 41, Gebregzi Depo. Vol. III 564:5-566:25.) Following its investigation, KFH terminated Plaintiff on August 27, 2025. (SS No. 80.)

### III. LEGAL STANDARD

Summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of showing the absence of a genuine dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets that burden, the nonmoving party must present specific facts showing a genuine issue for trial. Id. at 324.

THE HACKETT LAW FIRM
P.O. Box 330168, San Francisco, CA 94133
Telephone:(415) 410-9931

PLAINTIFF'S OPPOSITION TO DEFENDANT KAISER FOUNDATION HOSPITALS' MOTION FOR SUMMARY JUDGMENT

THE HACKETT LAW FIRM
P.O. Box 330168, San Francisco, CA 94133
Telephone:(415) 410-9931

In ruling on a motion for summary judgment, the Court must view all facts and draw all reasonable inferences in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Id. A genuine dispute exists whenever a rational trier of fact could find for the nonmoving party based on the evidence in the record. Id. at 248.

This standard has particular force in employment cases. The Ninth Circuit has instructed courts to "zealously guard[] an employee's right to a full trial, since discrimination claims are frequently difficult to prove without a full airing of the evidence and an opportunity to evaluate the credibility of the witnesses." *Weil v. Citizens Telecom Services Co., LLC*, 922 F.3d 993, 1000 (9th Cir. 2019). Consistent with that rule, "[v]ery little . . . evidence is necessary to raise a genuine issue of fact regarding an employer's motive; any indication of discriminatory motive . . . may suffice to raise a question that can only be resolved by a factfinder." Id.; see also *Davis v. Team Electric Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008).

### IV. ARGUMENT

**A. DEFENDANT'S SEPARATE STATEMENT SHOULD NOT BE TREATED AS A SUBSTITUTE FOR RULE 56 PROOF.**

As a threshold matter, KFH's motion relies on a separate statement of asserted undisputed facts as though the filing of that document can transform disputed allegations into undisputed facts. Civil Local Rule 56-2(a) provides that, unless required by the assigned Judge, "no separate statement of undisputed facts or joint statement of undisputed facts shall be submitted." Civil L.R. 56-2(a). Rule 56-2 does not permit a moving party to create a state-court style separate statement and then ask the Court to treat each employer-drafted assertion as established fact.

This is not merely a formatting issue. KFH's motion depends on the separate-statement device to isolate pieces of the record, compress disputed testimony into defense-favorable characterizations, and treat investigative conclusions as though they were judicial findings. Rule 56 does not allow that. Even if the Court considers the separate statement as an organizational

aid, it cannot be used to avoid the governing summary judgment standard: the Court must review the evidence in the light most favorable to Plaintiff and must disregard defense characterizations that require credibility findings or fact weighing.

Accordingly, to the extent KFH's motion depends on a separate statement submitted without an order requiring one, Plaintiff respectfully requests that the Court decline to treat that filing as a basis for summary judgment. At minimum, the separate statement should not be credited over Plaintiff's record evidence, deposition testimony, declarations, and reasonable inferences.

**B. PLAINTIFF HAS RAISED TRIABLE ISSUES ON HER FEHA HARASSMENT CLAIM.**

**1. Applicable Law**

To prevail on a FEHA harassment claim, a plaintiff must show unwelcome conduct based on a protected characteristic that was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment. *Bailey v. San Francisco District Attorney's Office*, 16 Cal. 5th 611, 635 (2024). The severity or seriousness of the conduct "varies inversely with the pervasiveness or frequency" of that conduct, and isolated acts may be actionable if sufficiently severe in light of the totality of the circumstances. Id. at 640-41. Courts assess the totality of circumstances, including frequency, severity, whether the conduct is physically threatening or humiliating, and whether it unreasonably interferes with work performance. *Zetwick v. County of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017). The standard is "severe or pervasive," not "severe and pervasive." Id. at 441.

**2. Evidence Supporting Plaintiff**

KFH frames the harassment claim as though it is limited to three isolated events in February 2024. The record is broader. Plaintiff's harassment claim rests on a pattern of conduct spanning her tenure in the Oakland PACU, including direct statements by House targeting Plaintiff's Ethiopian/Tigray identity and human-rights advocacy, followed by adverse treatment and discipline after Plaintiff complained.

PLAINTIFF'S OPPOSITION TO DEFENDANT KAISER FOUNDATION HOSPITALS' MOTION FOR SUMMARY JUDGMENT

THE HACKETT LAW FIRM
P.O. Box 330168, San Francisco, CA 94133
Telephone:(415) 410-9931

THE HACKETT LAW FIRM
P.O. Box 330168, San Francisco, CA 94133
Telephone:(415) 410-9931

The most significant evidence is House's comment comparing Plaintiff's Tigray ethnic group to Jewish people in the Holocaust. (Plf. Depo. Vol. III, 624:19-625:10.) In context, the comment was not an abstract political discussion; it was a supervisor's comment to an Ethiopian/Tigray employee about her people, her history, and her advocacy. When Plaintiff reacted with surprise, House said "I'm just joking." (Id. at 625:5-6.) House also told Plaintiff that "it's a joke to see you as a human right advocate." (Id. at 625:18-20.) House communicated the same dismissiveness about Plaintiff's advocacy to Jefferson, who relayed it back to Plaintiff. (Id. at 625:21-626:1.) Plaintiff's treating psychologist, Dr. Kopacz, testified that Plaintiff described House as being on the "pro-government" side of Ethiopian politics while Plaintiff was on the "pro-human rights" side, and that this political/ethnic dynamic contributed to the conflict. (Kopacz Depo. at 52:1-55:20.)

House also subjected Plaintiff to a pattern of disparaging workplace labels. Following Plaintiff's complaints about workplace conditions, House sent emails to Hoyte and others characterizing Plaintiff as "toxic" and "difficult." (House Depo. at 132:1-136:20.) House defined "toxic" as "spreads negativity." (House Depo. at 133:1-5.) When asked whether she used those labels after Plaintiff filed complaints, House acknowledged: "I'm going to say yes because there were many incidences that happened throughout Hanna's tenure." (House Depo. at 135:1-136:20.) Hoyte confirmed that he also called Plaintiff "disrespectful" in his own emails. (Hoyte Depo. at 69:1-20.)

The February 2024 incidents must be evaluated against that broader backdrop. The private email breach resulted in Plaintiff's confidential complaints being distributed to House and Smith, and later to Hoyte, yet the investigation could not substantiate Plaintiff's claim. (SS No. 29; Pl.'s Ex. 22 at 1.) Plaintiff's February 27 departure followed what she reported as a verbal confrontation by House at the nursing station. (Pl.'s Ex. 24 at 1.) Plaintiff also testified that before Hoyte became director, Jefferson deleted approved vacation time that Ana then denied. (Pl.'s Ex. 41, Gebregzi Depo. Vol. III 304:18-306:8.)

THE HACKETT LAW FIRM
P.O. Box 330168, San Francisco, CA 94133
Telephone:(415) 410-9931

### 3. Why Defendant Has Not Met Its Burden

KFH's motion fails because it slices the record into isolated events and then argues that no single event is enough. That is not the FEHA standard. Bailey requires the Court to consider the totality of the circumstances. Bailey, 16 Cal. 5th at 635. A jury is entitled to consider the Holocaust/Tigray comment together with House's repeated dismissal of Plaintiff's advocacy, House's "toxic" and "difficult" labels after complaints, House's control over Plaintiff's schedule and assignments, House's involvement in the disciplinary process despite Plaintiff's complaints against her, and the broader pattern of administrative leave in the unit.

KFH's argument that one comment is insufficient also misstates Bailey. Bailey recognizes that an isolated act may be actionable when sufficiently severe in light of the surrounding circumstances, and that severity and pervasiveness operate on an inverse scale. Bailey, 16 Cal. 5th at 640-41. Here, the comment was not made by a coworker with no power over Plaintiff. It was made by Plaintiff's direct manager, in the context of Plaintiff's ethnic identity and advocacy, and was followed by repeated derogatory characterizations and discipline after Plaintiff complained. A reasonable jury could conclude that the comment was evidence of a hostile environment and discriminatory animus.

The record also supports a jury inference that House's conduct unreasonably interfered with Plaintiff's working conditions. House never assigned Plaintiff as charge nurse in nearly three years. (House Depo. at 84:1-10.) The union documented concern that it was uncommon for a small department to place four nurses on PAL in one year. (Pl.'s Ex. 42 at 0003.) KFH cannot obtain summary judgment by presenting its own investigations as neutral while ignoring evidence that the complained-of manager participated in the process and labeled Plaintiff negatively after protected complaints.

### 4. Triable Issues Require Jury Resolution

Whether House's Holocaust/Tigray comment, her "joke" comments about Plaintiff's advocacy, the "toxic" and "difficult" labels, the interference with Plaintiff's working conditions, and the broader administrative-leave pattern created severe or pervasive harassment is a fact question. A reasonable jury could find that the totality of this conduct created an abusive

PLAINTIFF'S OPPOSITION TO DEFENDANT KAISER FOUNDATION HOSPITALS' MOTION FOR
SUMMARY JUDGMENT

working environment based on Plaintiff's protected characteristics. Summary adjudication of the harassment claim should be denied.

## C. GENUINE DISPUTES OF MATERIAL FACT PRECLUDE SUMMARY JUDGMENT ON THE FEHA DISCRIMINATION CLAIM.

### 1. Applicable Law

To state a discrimination claim under FEHA, a plaintiff must show: (1) membership in a protected class; (2) competent performance; (3) an adverse employment action; and (4) circumstances suggesting a discriminatory motive. *Guz v. Bechtel National, Inc*., 24 Cal. 4th 317, 355 (2000). This Court applies the McDonnell Douglas burden-shifting framework. *Opara v. Yellen*, 57 F.4th 709, 721 (9th Cir. 2023). The requisite degree of proof necessary to establish a prima facie case at summary judgment "is minimal and does not even need to rise to the level of a preponderance of the evidence." Id. at 722 (internal citation omitted). Where the employer offers a legitimate reason, the plaintiff must demonstrate pretext, which may be shown directly or indirectly. *Chuang v. University of California Davis, Board of Trustees*, 225 F.3d 1115, 1127 (9th Cir. 2000). Critically, evidence of pretext "must be considered cumulatively." Id.

### 2. Evidence Supporting Plaintiff: Competent Performance

KFH does not dispute that Plaintiff is a member of a protected class as a Black woman of African/Ethiopian descent. KFH instead argues that Plaintiff cannot show competent performance because KFH accumulated complaints and disciplinary records. But the disputed issue is not whether KFH generated paperwork; it is whether the paperwork reflects legitimate performance concerns or discriminatory and retaliatory targeting. Plaintiff's evidence creates triable issues on that question.

First, the four patient care complaints cited in the December 2024 verbal warning arose after Plaintiff's formal harassment and safety reports, and Plaintiff disputed them as retaliatory and subjective. (Pl.'s Ex. 24 at 1; Pl.'s Ex. 42 at 0003.) One complaint involved a visitor Plaintiff described as a Kaiser employee and "Ana House's friend." (Pl.'s Ex. 42 at 0003.) The union later wrote that the allegations read at the fact-finding meeting were "unproven and highly subjective" and that there was "no evidence of malpractice or medication errors committed by" Plaintiff.

PLAINTIFF'S OPPOSITION TO DEFENDANT KAISER FOUNDATION HOSPITALS' MOTION FOR SUMMARY JUDGMENT

THE HACKETT LAW FIRM
P.O. Box 330168, San Francisco, CA 94133
Telephone:(415) 410-9931

(Pl.'s Ex. 42 at 0010.) Plaintiff was not told in advance which specific allegations she would face at the March 27, 2024 fact-finding meeting. (House Depo. at 55:1-58:20.)

Second, the June 13, 2025 morphine incident is sharply disputed. Flowers pulled the medication because of Plaintiff's finger injury. (House Depo. at 93:1-94:20.) Dr. Mattas was physically present at the bedside, and Plaintiff testified that Dr. Mattas verbally approved the incremental administration. (Plf. Depo. Vol. III, 604:1-25.) The infant remained clinically stable, no Rapid Response or reversal agent was required, and the anesthesiologist cleared the infant for transfer to the pediatric floor. (Plf. Depo. Vol. III, 663:1-20.) House admitted she did not know whether the infant remained stable. (House Depo. at 95:1-20.) No one else, including Flowers, was disciplined. (House Depo. at 105:11-20.)

Third, nurse Eucharia Vixon, who was not of Ethiopian descent, committed multiple reported unsafe practices that Plaintiff and other nurses documented, but management took no disciplinary action against Vixon. (Plf. Depo. Vol. III, 653:1-654:20.) That comparator evidence supports both competent performance and pretext: a jury could find that KFH treated similar or more serious conduct differently when the employee was not Plaintiff.

**3. Evidence Supporting Plaintiff: Discriminatory Motive**

House's Holocaust/Tigray comment is direct evidence of discriminatory animus based on Plaintiff's Ethiopian national origin and ethnic identity. A supervisor's racial or national-origin remark, even if isolated, can constitute sufficient evidence of discriminatory intent to raise a genuine issue of material fact. *Cordova v. State Farm Insurance Companies,* 124 F.3d 1145, 1149 (9th Cir. 1997). The comment was made by House, Plaintiff's direct supervisor with authority over assignments, day-to-day working conditions, and discipline recommendations. House then reinforced the same view by communicating that Plaintiff's Ethiopian human-rights advocacy was "a joke" to Jefferson.

The circumstantial evidence points in the same direction. House labeled Plaintiff "toxic" following complaints. (House Depo. at 135:1-136:20.) Four nurses in the small unit were placed on PAL in one year after criticism of House. (Pl.'s Ex. 42 at 0003.) Hoyte came from a prior

workplace where nurses had filed a vote of no confidence over "excessive and intimidating investigatory meetings." (Hoyte Depo. at 40:1-48:20.) Flowers and Vixon were not disciplined for comparable or more serious conduct. And the adverse actions followed Plaintiff's complaints in a sequence that permits an inference of motive.

**4. Why Defendant Has Not Met Its Burden**

KFH's motion treats the number of complaints as proof of poor performance. But volume is not the issue at summary judgment. The issue is whether a reasonable jury could find those complaints unreliable, selectively generated, selectively credited, or used as a pretext for discrimination. On this record, it could. House was connected to the disciplinary chain, had expressed disdain for Plaintiff's protected identity and advocacy, used derogatory labels after Plaintiff complained, and participated in discipline despite being a subject of Plaintiff's complaints.

KFH's reliance on Yoon's investigation also does not eliminate the triable issue. Yoon's investigation addressed selected incidents presented through management channels; it did not resolve whether the broader disciplinary process was infected by discriminatory animus, selective enforcement, or retaliation. Chuang requires pretext evidence to be considered cumulatively. Chuang, 225 F.3d at 1127. The cumulative record includes the Holocaust/Tigray comment, the "joke" advocacy comments, disparate treatment of Vixon and Flowers, the temporal pattern after complaints, and disputed facts about the central performance events. A jury could reasonably find discrimination.

**5. Triable Issues Require Jury Resolution**

Whether Plaintiff was performing competently, whether KFH's stated reasons were true or pretextual, and whether discriminatory motive influenced the discipline and termination are factual questions. Because the record contains direct and circumstantial evidence supporting Plaintiff, summary adjudication of the discrimination claim should be denied.

THE HACKETT LAW FIRM
P.O. Box 330168, San Francisco, CA 94133
Telephone:(415) 410-9931

PLAINTIFF'S OPPOSITION TO DEFENDANT KAISER FOUNDATION HOSPITALS' MOTION FOR SUMMARY JUDGMENT

**D. PLAINTIFF'S RETALIATION CLAIM DOES NOT FAIL AS A MATTER OF LAW.**

**1. Applicable Law**

KFH argues that Plaintiff's retaliation claim fails because Cal. Code Regs., tit. 2, § 11021 creates no private right of action. But Plaintiff's retaliation theory is not limited to § 11021. The operative complaint alleges that "Claimant has been retaliated against by Respondent on multiple occasions after Claimant made reports to appropriate personnel at her workplace about safety conditions at the workplace." (FAC ¶ 16.) Those allegations describe protected activity and adverse action independently actionable under FEHA's anti-retaliation provision, California Government Code § 12940(h).

Under FEHA, an employer may not discriminate against an employee "because the person has opposed any practices forbidden under" FEHA. Cal. Gov't Code § 12940(h). To establish FEHA retaliation, a plaintiff must show: (1) protected activity; (2) an adverse employment action; and (3) a causal connection between the two. *Flores v. City of Westminster*, 873 F.3d 739, 749 (9th Cir. 2017). The causal link "may be established by an inference derived from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." Id. at 749 (internal quotation omitted). Even if the complaint's reference to § 11021 were inapt, dismissal is not warranted where the facts support retaliation under FEHA § 12940(h).

**2. Evidence Supporting Plaintiff**

Plaintiff engaged in repeated protected activity known to management. In October 2023, she emailed House and union representative Ben Sizemore formally reporting that Jefferson was creating unsafe conditions in the PACU. (Pl.'s Ex. 42 at 0053.) In November 2023, she organized a staff meeting with Director Hoyte in which multiple nurses complained about Jefferson's management. (SS No. 17.) In February 2024, she filed formal complaints regarding the Ayalew confrontation, unauthorized email access, and House's conduct on February 27. (Pl.'s Ex. 22 at 1; Pl.'s Ex. 24 at 1; SS No. 17.) In March and April 2024, Plaintiff and her union continued raising concerns about retaliation, administrative leave, and House's involvement in

THE HACKETT LAW FIRM
P.O. Box 330168, San Francisco, CA 94133
Telephone:(415) 410-9931

PLAINTIFF'S OPPOSITION TO DEFENDANT KAISER FOUNDATION HOSPITALS' MOTION FOR SUMMARY JUDGMENT

THE HACKETT LAW FIRM
P.O. Box 330168, San Francisco, CA 94133
Telephone:(415) 410-9931

the investigation despite Plaintiff's complaints against House. (Pl.'s Ex. 25 at 1; Pl.'s Ex. 42 at 0010.) After filing this lawsuit, Plaintiff continued to dispute KFH's actions and testified that she experienced renewed harassment and investigation activity when she returned to Oakland. (Pl.'s Ex. 41, Gebregzi Depo. Vol. III 564:5-566:25; SS Nos. 39-47, 72-77.)

Adverse actions followed those complaints. Plaintiff was placed on PAL on March 7, 2024, weeks after the February complaints. (SS No. 10.) She received a one-day suspension and verbal warning on December 2-3, 2024. (SS Nos. 55, 58.) She received a written warning from Richmond Director So on June 26, 2025, shortly after returning from medical leave. (SS No. 69.) She was placed on a second PAL on June 16, 2025, after management reported the May-June 2025 incidents, and KFH terminated her on August 27, 2025. (SS Nos. 11, 39-47, 72-80.)

**3. Why Defendant Has Not Met Its Burden**

Temporal proximity between three and eight months can support a retaliation inference. *Coszalter v. City of Salem*, 320 F.3d 968, 977 (9th Cir. 2003) ("[W]hen adverse employment actions are taken between three and eight months after the plaintiffs' protected speech, a reasonable jury could infer that retaliation is a substantial or motivating factor."). Even where temporal gaps are longer, "circumstantial evidence of a 'pattern of antagonism' following the protected conduct can also give rise to the inference." *Porter v. California Department of Corrections*, 419 F.3d 885, 895 (9th Cir. 2005).

This record shows both timing and pattern. Plaintiff complained repeatedly; discipline followed repeatedly. The union identified Plaintiff's PAL placement as a "red flag" and noted that it was uncommon for a small department to place four nurses on PAL in one year. (Pl.'s Ex. 42 at 0003.) House's emails labeling Plaintiff "toxic" followed Plaintiff's complaints. (House Depo. at 135:1-136:20.) The June 16, 2025 administrative leave was delivered by supervisors named as defendants in Plaintiff's active federal lawsuit, without a union representative despite Plaintiff's request, and culminated in termination. (House Depo. at 154:1-155:20; Pl.'s Ex. 41, Gebregzi Depo. Vol. III 554:1-21; SS Nos. 48-49, 80.)

PLAINTIFF'S OPPOSITION TO DEFENDANT KAISER FOUNDATION HOSPITALS' MOTION FOR SUMMARY JUDGMENT

THE HACKETT LAW FIRM
P.O. Box 330168, San Francisco, CA 94133
Telephone:(415) 410-9931

KFH argues that § 11021(b)'s safe harbor forecloses the claim because the discipline resulted from enforcement of reasonable policies. That argument assumes the disputed conclusion. The jury must decide whether KFH's policies were enforced reasonably or selectively, and whether the asserted reasons were honest or retaliatory. The disparate treatment of Vixon and Flowers, the suspicious timing, the "toxic" labels after complaints, and the escalation of discipline after protected activity create a triable issue on causation. "Evidence based on timing can be sufficient to let the issue go to the jury, even in the face of alternative reasons proffered by the defendant." Passantino v. Johnson & Johnson Consumer Products, Inc., 212 F.3d 493, 507 (9th Cir. 2000).

**4. Triable Issues Require Jury Resolution**

Whether Plaintiff's protected complaints about patient safety, management misconduct, harassment, and retaliation were substantial motivating reasons for her discipline and termination is a factual question. The record supports a reasonable inference of retaliation, and summary adjudication of the retaliation claim should be denied.

**E. TRIABLE ISSUES EXIST ON PLAINTIFF'S WORKPLACE DEFAMATION CLAIM.**

**1. Applicable Law**

Under California law, defamation requires a false and unprivileged publication that tends to injure the plaintiff in her occupation. The common interest privilege under California Civil Code § 47(c) may apply to internal workplace communications. However, the privilege is conditional: it protects statements only when made "without malice." Cal. Civ. Code § 47(c). Where the plaintiff presents evidence of actual malice, defined as "hatred or ill will toward the plaintiff or . . . lack of reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights," the privilege is defeated and a triable issue remains. *Noel v. River Hills Wilsons, Inc.*, 113 Cal. App. 4th 1363, 1370 (2003).

**2. Evidence Supporting Plaintiff**

The defamation claim rests on false accusations made about Plaintiff's professional competence and integrity as a nurse. The most serious is the accusation that Plaintiff improperly administered morphine to an infant on June 13, 2025, violated the physician's order, and falsely

documented the dosage. (SS Nos. 74-75.) That accusation is materially disputed. Flowers pulled the medication, Dr. Mattas authorized the titration approach at the bedside, the infant remained stable, and no emergency protocol was activated. (Plf. Depo. Vol. III, 604:1-25; House Depo. at 93:1-95:20.)

The malice evidence is likewise sufficient for trial. House did not interview the infant's mother. (House Depo. at 105:1-10.) She did not determine whether the infant had remained stable before reporting the incident. (House Depo. at 95:1-20.) She acknowledged that Flowers pulled the medication but did not discipline Flowers or report Flowers' role in the same way. (House Depo. at 93:1-94:20; 105:11-20.) Combined with House's documented "toxic" labels and hostility following Plaintiff's complaints, a reasonable jury could find lack of reasonable grounds, reckless disregard, or ill will sufficient to defeat the common interest privilege.

Additional defamatory statements include the February 27, 2024 accusation of job abandonment, even though Plaintiff's fact-meeting notes identified witnesses and stated she told management she was leaving because she felt unsafe after being verbally attacked. (Pl.'s Ex. 42 at 0002.) The record also includes statements about Plaintiff's fitness as a nurse communicated during investigations while Plaintiff was an active litigant against the same supervisors.

Publication also presents a triable issue. KFH argues there was no actionable publication, but communications about Plaintiff's alleged misconduct were made to Richmond Director Ivy So, to regional HR investigators, and through the termination-review process. Richmond Director So was outside the Oakland management chain that Plaintiff had accused of harassment and retaliation. (SS No. 70.) Accusatory statements relayed to her about Plaintiff's professional fitness, if false and made with malice, are sufficient to defeat summary adjudication.

**3. Why Defendant Has Not Met Its Burden**

KFH's privilege argument depends on the Court finding no malice as a matter of law. The record does not permit that finding. House's failure to interview key witnesses, failure to determine whether the infant remained stable, omission of Flowers' role, and repeated negative labels after Plaintiff's complaints permit a reasonable jury to find actual malice under Noel. KFH

THE HACKETT LAW FIRM
P.O. Box 330168, San Francisco, CA 94133
Telephone:(415) 410-9931

PLAINTIFF'S OPPOSITION TO DEFENDANT KAISER FOUNDATION HOSPITALS' MOTION FOR SUMMARY JUDGMENT

cannot invoke the common interest privilege to immunize statements that a jury could find were made with ill will or reckless disregard for truth.

**4. Triable Issues Require Jury Resolution**

Whether House and KFH published false statements about the morphine incident, the alleged job abandonment, and Plaintiff's professional fitness, and whether those statements were made with actual malice, are factual questions. Summary adjudication of the defamation claim should be denied.

**F. PLAINTIFF'S CONSTRUCTIVE DISCHARGE AND CONSTRUCTIVE TERMINATION CLAIMS SURVIVE TO THE EXTENT THEY REFLECT WRONGFUL TERMINATION.**

Defendant is correct that Plaintiff was actually terminated on August 27, 2025. (SS No. 80.) To that extent, constructive discharge is not Plaintiff's primary theory. Plaintiff acknowledges that the Fifth and Sixth Causes of Action survive to the extent they are read as alleging wrongful termination in violation of public policy based on the underlying discrimination and retaliation described above.

That derivative theory survives because the underlying FEHA claims survive. Where a termination is allegedly motivated by discrimination and retaliation, and the record contains triable evidence supporting those claims, the related wrongful-termination theory cannot be dismissed merely because Defendant disputes the underlying motive. The same facts that preclude summary judgment on discrimination and retaliation also preclude summary judgment on wrongful termination in violation of public policy.

**G. PLAINTIFF'S BREACH OF CONTRACT CLAIM RAISES TRIABLE ISSUES.**

**1. Applicable Law**

KFH argues that Plaintiff's breach of contract claim is preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a), because it requires interpretation of the CBA. The Ninth Circuit has established, however, that FEHA employment discrimination and retaliation claims are not preempted by LMRA § 301, even where an employer defends those claims by reference to CBA procedures. *Detabali v. St. Luke's Hospital*, 482 F.3d 1187, 1189 (9th Cir. 2007) ("[W]e see no need to depart from a long line of our cases holding that FEHA

PLAINTIFF'S OPPOSITION TO DEFENDANT KAISER FOUNDATION HOSPITALS' MOTION FOR SUMMARY JUDGMENT

THE HACKETT LAW FIRM
P.O. Box 330168, San Francisco, CA 94133
Telephone:(415) 410-9931

THE HACKETT LAW FIRM
P.O. Box 330168, San Francisco, CA 94133
Telephone:(415) 410-9931

employment discrimination claims are not ipso facto preempted by § 301 of the LMRA."); *Ramirez v. Fox Television Station, Inc.*, 998 F.2d 743, 748 (9th Cir. 1993) ("[I]n every case in which we have considered an action brought under [FEHA], we have held that it is not preempted by section 301."). Section 301 preempts a state-law claim only if resolution of the claim depends on the meaning of a CBA, and "[a] reference to or consideration of the terms of a collective bargaining agreement is not the equivalent of interpreting the meaning of the terms." Detabali, 482 F.3d at 1193.

**2. Evidence Supporting Plaintiff and Why Defendant Has Not Met Its Burden**

Plaintiff's breach of contract claim is based on KFH's failure to follow its own CBA procedures and basic contractual protections. The record supports that theory in several ways: (a) KFH denied Plaintiff her union representative when she explicitly requested one at the June 16, 2025 administrative leave meeting, despite House testifying that Plaintiff requested a representative more than once (House Depo. at 154:1-155:20; Pl.'s Ex. 41, Gebregzi Depo. Vol. III 554:1-21); (b) KFH failed to provide Plaintiff advance written notice of the specific allegations before the March 27, 2024 fact-finding meeting (House Depo. at 55:1-58:20); and (c) KFH allowed House to act as both a subject of Plaintiff's complaints and a discipline recommender, compromising the impartiality required by just-cause procedures. (House Depo. at 53:1-55:20.)

The question is not what the CBA means in the abstract. The question is whether KFH followed the procedures it was required to follow. That inquiry does not require construing ambiguous CBA terms; it requires the factfinder to decide what occurred and whether KFH honored its own procedures. Detabali, 482 F.3d at 1193. On this record, those factual disputes cannot be resolved on summary judgment.

**3. Triable Issues Require Jury Resolution**

Whether KFH violated the CBA's just-cause and procedural protections in investigating, disciplining, and terminating Plaintiff is a factual question. Summary adjudication of the contract claim should be denied.

PLAINTIFF'S OPPOSITION TO DEFENDANT KAISER FOUNDATION HOSPITALS' MOTION FOR SUMMARY JUDGMENT

**H. PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES REQUIRES NO SEPARATE DISPOSITION AT THIS STAGE.**

KFH argues that punitive damages are not pled in the operative complaint and, alternatively, that no clear and convincing evidence of malice, oppression, or fraud exists. Plaintiff does not dispute that the operative complaint does not contain a separate punitive damages allegation. If the Court grants summary judgment on all underlying claims, the punitive damages issue is moot. If the Court denies summary judgment on any underlying claim, the parties may address punitive damages as appropriate at trial or through subsequent proceedings. Because the underlying claims survive, the punitive damages question does not warrant separate summary disposition at this stage.

<u>**V. CONCLUSION**</u>

KFH has not carried its burden to show that no triable issue of material fact exists. The record contains direct evidence of discriminatory animus through House's comments targeting Plaintiff's Tigray heritage and Ethiopian human-rights advocacy. It contains deposition testimony from KFH's own witnesses contradicting management's account of key events, including the union-representation denial, the morphine incident, and the February 27, 2024 job-abandonment accusation. It contains a documented sequence of adverse actions following protected complaints, from the first paid administrative leave in March 2024 through termination in August 2025. And it contains evidence that similarly situated employees were not investigated or disciplined in the same manner.

Plaintiff has presented substantial evidence supporting each cause of action in the operative complaint. The credibility of witnesses, the weight of competing accounts, and the inferences to be drawn from the cumulative record are questions for the jury. Summary judgment is not the appropriate vehicle to decide them.

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion for Summary Judgment in its entirety.

Respectfully submitted,

PLAINTIFF'S OPPOSITION TO DEFENDANT KAISER FOUNDATION HOSPITALS' MOTION FOR SUMMARY JUDGMENT

THE HACKETT LAW FIRM
P.O. Box 330168, San Francisco, CA 94133
Telephone:(415) 410-9931

Dated: July 2, 2026

THE HACKETT LAW FIRM

By: _Dylan Hackett_
   Dylan Hackett
   *Attorney for Plaintiff Hanna Gebregzi*

THE HACKETT LAW FIRM
P.O. Box 330168, San Francisco, CA 94133
Telephone:(415) 410-9931

-25-

PLAINTIFF'S OPPOSITION TO DEFENDANT KAISER FOUNDATION HOSPITALS' MOTION FOR SUMMARY JUDGMENT