SEYFARTH SHAW LLP
Christian J. Rowley (SBN 187293)
E-mail:  crowley@seyfarth.com
G. Daniel Newland (State Bar No. 087965)
Email: dnewland@seyfarth.com
Tara R. Mirchandani (SBN 370477)
E-mail: tmirchandani@seyfarth.com
560 Mission Street, 31st Floor
San Francisco, California 94105
Telephone:     (415) 397-2823
Facsimile:     (415) 397-8549

SEYFARTH SHAW LLP
James Sobolov (SBN 352529)
jsobolov@seyfarth.com
601 South Figueroa Street, Suite 3300 Los Angeles,
California 90017-5793
Telephone: (213) 270-9600
Facsimile: (213) 270-9601


Attorneys for Defendant
KAISER FOUNDATION HOSPITALS (improperly
named as KAISER FOUNDATION HOSPITAL D/B/A
KAISER PERMANENTE OAKLAND MEDICAL
CENTER)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HANNA GEBREGZI,<br><br>Plaintiff,<br><br>v.<br><br>KAISER FOUNDATION HOSPITAL, D/B/A KAISER PERMANENTE OAKLAND MEDICAL CENTER, ANA HOUSE, AND LIONEL HOYTE<br><br>Defendants. | Case No. 4:24-cv-06322-JSW<br><br>**DEFENDANT KAISER FOUNDATION HOSPITALS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY ADJUDICATION**<br><br>Date:     July 24, 2026<br>Time:     9:00 a.m.<br>Judge:    Judge Jeffrey S. White |

1

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................................... 1

II.   LEGAL ARGUMENT .................................................................................................... 1

    A.    GEBREGZI MISCHARACTERIZES THE EVIDENCE .................................................. 1

    B.    GEBREGZI'S FEHA HARASSMENT CLAIM CANNOT SURVIVE ........................... 1

        1.    Gebregzi Attempts to Conflate Personnel Management Actions With Harassment ........................................................................................................ 2

        2.    Gebregzi Misconstrues Political Affiliation As a Protected Characteristic ............ 2

        3.    House's Alleged Comments Regarding the Tigray People are Isolated and Not Indicative of Animus ................................................................................ 3

    C.    GEBREGZI'S FEHA DISCRIMINATION CLAIM CANNOT SURVIVE SUMMARY JUDGMENT ...................................................................................... 4

        1.    Gebregzi Offers Insufficient Evidence To Establish A Genuine Dispute as to Her Performance ....................................................................................... 4

        2.    Gebregzi Cannot Show Discriminatory Motive ...................................................... 6

    D.    GEBREGZI'S RETALIATION CLAIM IS FACTUALLY DEFICIENT ......................... 7

        1.    Gebregzi Has Not Shown a "Pattern of Antagonism" .......................................... 8

        2.    Gebregzi Misstates the Safe Harbor Provision of § 11021(b) ............................... 8

    E.    GEBREGZI'S WORKPLACE DEFAMATION CLAIM REMAINS UNSUPPORTED ......................................................................................................... 9

        1.    Statements Regarding the February 27, 2024 Job Abandonment Incident are True and Were Not Published, and Thus Cannot Qualify as Defamation ........................................................................................................ 10

        2.    Communications Concerning The June 13, 2025 Medication Administration Incident Do Not Qualify As Defamation ................................... 11

        3.    Alleged Defamatory Statements to Ivy So, Regional HR Investigators, and Through the Termination-Review Process Do Not Constitute Third-Party Publications ................................................................................................. 12

    F.    GEBREGZI'S BREACH OF CONTRACT ARGUMENT NECESSARILY IMPLICATES THE CBA, SHOWING WHY PREEMPTION UNDER LMRA § 301 IS APPROPRIATE ............................................................................................. 12

i

G.    GEBREGZI ATTEMPTS TO CONVERT INADEQUATE PLEADINGS INTO ENTIRELY NEW CLAIMS WITHOUT PROPER NOTICE ........................................ 13

1.    Gebregzi's Alleged FEHA Retaliation Claims ...................................................... 14

2.    Gebregzi's Alleged Wrongful Termination Claim ............................................... 14

3.    Gebregzi's Purported Punitive Damages Claim ................................................... 15

III.    CONCLUSION ............................................................................................................ 15

327040855v.3

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 ...............................................................................................................14

*Bailey v. San Francisco District Attorney's Office*,
16 Cal. 5th 611 (Cal., 2024)..........................................................................................4

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................................13, 14

*Bierbower v. FHP, Inc.*,
70 Cal. App. 4th 1 (1999) ............................................................................................12

*Campanelli v. Regents of University of California*,
44 Cal. App. 4th 572 (Cal. Ct. App. 1996) ..................................................................11

*Cordova v. State Farm Insurance Companies*,
124 F.3d 1145 (9th Cir., 1997) .......................................................................................6

*Detabali v. St. Luke's Hospital*,
482 F.3d 1199 (9th Cir., 2007) .....................................................................................13

*Dible v. Haight Ashbury Free Clinics, Inc.*,
170 Cal.App.4th 843 (Cal. Ct. App., 2009) ...........................................................11, 12

*Gannon v. Potter*,
2006 WL 3422215 (N.D. Cal. Nov. 28, 2006), aff'd, 298 F. App'x 623 (9th Cir.
2008) .............................................................................................................................14

*Hanson v. Lucky Stores, Inc.*,
74 Cal. App. 4th 215 (Cal Ct. App., 1999) ..................................................................15

*Harris v. Rand*,
682 F.3d 846 (9th Cir. 2012) .......................................................................................13

*Janken v. GM Hughes Electronics*,
46 Cal. App. 4th 55 (Cal Ct. App., 1996) ......................................................................2

*Matsushita Electric Industry Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)........................................................................................................4

*Merrick v. Farmers Ins. Group*,
892 F.2d 1434 (9th Cir. 1990) ........................................................................................6

iii

*Nesbit v. Pepsico Inc.*,
    994 F.2d 703 (9th Cir. 1993) ...........................................................................................................6

*Nigro v. Sears, Roebuck and Co.*,
    784 F.3d 495 (9th Cir. 2015) ...................................................................................................3, 5, 6

*Noel v. River Hills Wilsons, Inc.*,
    113 Cal. App. 4th 1353 (Cal. Ct. App. 2003) .................................................................10, 11

*Petersen v. Apple Computer, Inc.*,
    C 04–0405PJH, 2005 U.S. Dist. LEXIS 49722 (N.D. Cal. Sep. 19, 2005) .............................11

*Porter v. California*,
    419 F.3d 885 (9th Cir., 2005) ........................................................................................................8

*Reno v. Baird*,
    18 Cal. 4th 640 (Cal. 1998)............................................................................................................2

*Roby v. McKesson Corp.*,
    47 Cal. 4th 686 (Cal., 2009)...........................................................................................................2

*Rudwall v. Blackrock, Inc.*,
    289 Fed.Appx. 240 (9th Cir., 2008)..............................................................................................10

*Siazon v. Hertz Corp.*,
    No. 17-cv-05935-EMC, 2019 WL 1170778 (N.D. Cal. 2019) ..................................................15

*Young v. Anthony's Fish Grottos, Inc.*,
    830 F.2d 993 (9th Cir. 1987) ......................................................................................................13

**Statutes**

Cal. Code Regs. Tit. 2, § 11021 .................................................................................................8, 9

Cal. Code Regs Tit. 2, § 11021(b) ..................................................................................................7

Civ. Code § 47 ...............................................................................................................................10

Civ. Code § 3294(b)........................................................................................................................15

LMRA § 301 ..............................................................................................................................12, 13

**Other Authorities**

Fed. Rules Evid. Nos. 801, 802 .................................................................................................3, 5

FRCP 8(a)(2)............................................................................................................................13, 14

FRCP 8(a)(3)...................................................................................................................................15

327040855v.3

## I.    INTRODUCTION

Plaintiff Hanna Gebregzi ("Gebregzi") tries – and fails – to establish any genuine dispute of material fact. She mischaracterizes record evidence, circumvents federal notice pleading requirements, and present a narrative that cannot withstand a cursory glance. The evidence to which she points (much of it irrelevant to her arguments, conclusory, or improper) fails to support her allegations. As a result, Gebregzi falls far short of the substantial responsive evidence required to defeat summary judgment.

## II.    LEGAL ARGUMENT

### A.    GEBREGZI MISCHARACTERIZES THE EVIDENCE

Gebregzi argues that the filing of a separate statement, a procedural issue pursuant to the court's local rules, is a ploy by KFH to circumvent the standard of review on summary judgment. (Opp. at 11:7-12:8.) She requests that the court not treat the separate statement as a basis for summary judgment. (Id.) Gebregzi separately requests that the separate statement "not be credited over Gebregzi's record evidence, deposition testimony, declarations, and reasonable inferences." (Id.)  However, KFH's separate statement merely organizes existing evidence into a format easily referenced by the court.

Gebregzi's reply, for its part, includes multiple references to evidence not included within her compendium of evidence. Notably, Gebregzi's opposition makes fourteen separate references to "Pl.'s Ex. 42" when her compendium of evidence only includes 37 exhibits.[1] Consequently, Gebregzi makes frequent reference to non-existent "record evidence." KFH requests that the court ignore any information not supported by actual evidence.

### B.    GEBREGZI'S FEHA HARASSMENT CLAIM CANNOT SURVIVE

Gebregzi's FEHA harassment claim is, at best, a house of cards. In her view, the record is replete with examples of harassing conduct, the foremost of which are two comments by Ana House – one of which Gebregzi only learned of through another individual – regarding the Tigray people and Gebregzi's claimed human rights advocacy. (Opp. at 13:1-11.)

Gebregzi's Opposition fails to establish a triable issue of material fact in three distinct ways. First, a large portion of the allegedly harassing incidents to which Gebregzi points are fundamentally

---

[1] Gebregzi also makes reference to "Pl.'s Ex. 41" six separate times, but always does so alongside Vol. III of her deposition transcript, suggesting the exhibit being referenced is the transcript.

1

KFH'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGEMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

327040855v.3

personnel management actions, such as disciplining subordinates or assigning roles. Gebregzi fails to demonstrate that such actions were taken with actual malice. Accordingly, they cannot serve as evidence of harassment. Second, neither Gebregzi's claimed status as a human rights advocate, nor any associated political affiliations resulting therefrom, are protected characteristics. Finally, the primary comment Gebregzi identifies as evidence of animus, - an off-hand remark by House comparing the Tigray people to Jewish people during the Holocaust - is isolated and not indicative of animus. Without showing a triable issue of material fact, Gebregzi's harassment claim cannot survive summary judgment.

### 1.    Gebregzi Attempts to Conflate Personnel Management Actions With Harassment

That House "labeled" Gebregzi as 'toxic' and 'difficult' in emails to members of HR and fellow members of management (See Opp. at 13:12-19) is unavailing for the purposes of Gebregzi's FEHA harassment claim. Such comments were part of a broader set of personnel management actions, clearly meant to describe Gebregzi's impact on a workplace that House (and Hoyte) had to manage. Using these comments as the basis for a harassment claim undermines House's duty to speak candidly with fellow members of management and HR regarding a subordinate's behavior and chills conduct necessary for the management of a business. *See, e.g., Reno v. Baird*, 18 Cal. 4th 640, 645-647 (Cal. 1998).

Additionally, Gebregzi attempts to characterize alleged denials of vacation time, House's involvement in the disciplinary process, and House's failure to assign Gebregzi as charge nurse as evidence of harassment. (Opp. at 13:20-26; 14:6-8; 14:17-19.) All such categories are exactly the kind of personnel management decisions repeatedly identified by California Courts as falling outside harassment claims. *See, e.g., Janken v. GM Hughes Electronics*, 46 Cal. App. 4th 55, 63 (Cal Ct. App., 1996); *Reno*, 18 Cal. 4th at 645-647; *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 707 (Cal., 2009). In addition, Gebregzi's Opposition makes no showing of how these comments of "toxicity," House's involvement in the disciplinary process, or House's non-assignment of Gebregzi to a charge nurse position were in any way tied to her protected characteristics. As such Gebregzi has failed to raise a triable issue of fact as to a key element of her harassment claim.

### 2.    Gebregzi Misconstrues Political Affiliation As a Protected Characteristic

Gebregzi alleges that her physician, Dr. Kristin Kopacz, testified that Gebregzi had told her,

2

during intake, that House was on the "pro-government" side of Ethiopian politics. (Kopacz Depo., at 52:1-55:20.)[2] This demonstrates Gebregzi's view that she was harassed based on political affiliation, rather than an actual protected characteristic. Dr. Kopacz's testimony is also hearsay as to House's political leanings – an issue on which Dr. Kopacz has no personal knowledge. Fed. Rules Evid. Nos. 801, 802. Furthermore, the source of the alleged information is Plaintiff herself – who also has not shown evidence of personal knowledge of House's political leanings. Moreover, this is one of many examples in which Gebregzi re-packages her own self-serving conclusions, rather than the actual evidence necessary to establish a genuine dispute of material fact. *Cf. Nigro v. Sears, Roebuck and Co.*, 784 F.3d 495, 497-498 (9th Cir. 2015) ("The district court can disregard a self-serving declaration that states only conclusions and not facts that would be admissible evidence.") (internal citations omitted).

Gebregzi claims that House mocked Gebregzi's human rights advocacy, calling it a "joke." Yet House's view of Gebregzi's advocacy is fundamentally irrelevant to any harassment claim. Political beliefs and affiliations are not protected characteristics; no statute or case law in California recognizes them as such. Gebregzi's harassment claim therefore fails to the extent she attempts to establish a genuine dispute that such harassment is predicated on her political beliefs or affiliations.

**3.    House's Alleged Comments Regarding the Tigray People are Isolated and Not Indicative of Animus**

Gebregzi argues that the "most significant" evidence in support of her harassment claim is House's alleged comment comparing the Tigray ethnic group to Jewish people in the Holocaust. (Opp. at 13:1-4.) However, Gebregzi's retelling of the event lacks context provided in her deposition. Namely, Gebregzi alleged that House asked her about the war in her country before the conversation shifted to a discussion concerning the Holocaust. (Plf. Depo, 624:21-625:6) Gebregzi claims that House then asked about whether the Tigray were "like the black jews." (Id.) Indeed, it was Gebregzi's *own* interpretation that House's invocation of the Jewish people was "…a troublemaker kind of thing," that led her to interpret a negative connotation into the comment. (Id.) No reasonable jury could infer that a mere comparison of one group to another is derogatory in nature, especially as Gebregzi cites to no evidence that House thought of the Jewish people in a derogatory manner.

---

[2] Dr. Kopacz only actually testified that Gebregzi vaguely mentioned having a manager that she claimed was pro-government. (Kopacz Depo., at 52:1-55:20.)

3

327040855v.3

Gebregzi attempts to place this comment in a broader context in light of "repeated derogatory characterizations and discipline," citing to *Bailey v. San Francisco District Attorney's Office*, 16 Cal. 5th 611 (Cal., 2024). The "repeated derogatory characterizations," to which Gebregzi refers are the aforementioned emails between House, Hoyte, and members of Human Resources. As already noted, these messages were sent exclusively to HR and other members of management and are personnel management decisions; as are the instances of discipline, investigation, and assignment of duties which Gebregzi cites as further 'working conditions' evidence. (Opp. at 14:7-23.)

Much like a house of cards, Gebregzi's harassment claim collapses with the slightest scrutiny. She attempts to inflate a single comment into a pattern of harassment by pointing to personnel management actions and a comment about her political affiliation. Furthermore, the one instance of "animus" on which she chiefly relies – House's comparison between the Tigray and Jewish people - is an isolated, off-color remark. Such lacking evidence does not a genuine issue of material fact make, meaning Gebregzi's harassment claim cannot survive summary judgment. *See Matsushita Electric Industry Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### C. GEBREGZI'S FEHA DISCRIMINATION CLAIM CANNOT SURVIVE SUMMARY JUDGMENT

Gebregzi attempts to defend her FEHA discrimination claim on two separate grounds: 1) she argues that she performed her role competently and 2) she claims to provide evidence that supports an inference of discriminatory motive. Yet on both points she fails to establish a genuine dispute of material fact. The evidence Gebregzi provides is comprised heavily of improper evidence or evidence irrelevant to her claims. Further, as outlined above, particularly with respect to her argument concerning performance, Gebregzi makes repeated reference to an exhibit that cannot be identified, Exhibit 42, effectively precluding analysis of the veracity of the allegations made in connection with that Exhibit.

#### 1. Gebregzi Offers Insufficient Evidence To Establish A Genuine Dispute as to Her Performance

Gebregzi raises a slew of arguments in defense of her competence, but cites only to evidence that fails to establish a triable issue of fact. Namely, she alleges, in a conclusory manner, that the patient care complaints raised against her were "retaliatory and subjective," that the June 13, 2025 medication administration incident (in which Gebregzi improperly split an infant patient's dose and failed to

4

327040855v.3

properly document the administration of that split dose) is "sharply disputed," and that Eucharia Vixon committed multiple unsafe practices for which no disciplinary action was taken.

A substantial portion of the "record" to which Gebregzi cites in support of her argument against the veracity of the 2024 patient care complaints is comprised of her own conclusions, rather than facts necessary to establish a genuine dispute. *Cf. Nigro* 784 F.3d at 497-498 (9th Cir. 2015). Gebregzi points to evidence that merely characterizes her four patient care complaints as "retaliatory and subjective," and similarly characterizes the allegations read during the fact-finding meeting as somehow "unproven and highly subjective." (Opp. at 15:22-16:2.)

Gebregzi also relies heavily on facts irrelevant to her actual performance or findings related thereto. When addressing the June 13, 2025 medication administration incident, she focuses on the fact that another nurse pulled the medication and the clinical stability of the patient. (Opp. at 16:3-10.) Yet neither of those issues – including whether the nurse who pulled the medication was ever disciplined – is germane to the ultimate issue of 1) whether Gebregzi properly followed the physician's medication order and 2) falsely documented in the patient's chart that she had administered the single prescribed dose. It was those two actions which led to Gebregzi's discipline (SS Nos. 75, 81.) Gebregzi's brief mention of an alleged 'verbal approval' by a physician does little to address the issue of whether the administered medication was consistent with the physician's original order, nor does it at all address whether the incrementation was properly documented. Moreover, KFH objects to Gebregzi's testimony of the physician's statement as Hearsay and thus inadmissible for the purposes of her MSJ. See Fed. Rules Evid. Nos. 801, 802.

Gebregzi finally argues that a series of alleged unsafe practices committed by Eucharia Vixon, a black woman not of Ethiopian descent, can be used as comparator evidence of both competent performance and pretext. Critically, Gebregzi claims that the alleged unsafe practices did not lead to disciplinary action against Vixon. (Opp. at 16:11-15 (citing Plf. Depo. at 653:1-654:20).) Yet Gebregzi *misstates her own testimony*. Nowhere in the cited portion of her deposition transcript does Gebregzi ever discuss whether Vixon was disciplined due to the reported incidents. Furthermore, Gebregzi's allegation that Vixon was exhibiting "unsafe practices" without providing examples (let alone evidence)

5

327040855v.3

of those practices, is a conclusory allegation and thus insufficient to establish a genuine dispute of material facts. *Cf. Nigro* 784 F.3d at 497-498 (9th Cir. 2015).Without evidence supporting a lack of discipline, Gebregzi cannot rely on Vixon as a comparator. Whether for their conclusory nature or failure to support the facts she seeks to establish, the evidence to which Gebregzi cites fails to establish a genuine dispute of material fact as to the competence of her performance.

### 2.    Gebregzi Cannot Show Discriminatory Motive

Gebregzi relies on three types of evidence attempting to show discriminatory motive: 1) House's comment to her regarding the Tigray people and Jewish people during the Holocaust; 2) House's alleged mocking of Gebregzi's human rights advocacy; and 3) additional circumstantial evidence, including House's labeling Plaintiff as "toxic," the placement of four nurses on a PAL in one year, complaints from a prior workplace against Hoyte regarding his handling of investigatory meetings, and the non-discipline of two other nurses for conduct Gebregzi claims is "comparable or more serious," all of which is too attenuated from Gebregzi's discrimination claim to be relevant.

Gebregzi insists that House's comment comparing the Tigray people to the Jewish people during the Holocaust is "direct evidence of discriminatory animus based on [Gebregzi's] Ethiopian national origin and ethnic identity." She cites to *Cordova v. State Farm Insurance Companies*, 124 F.3d 1145 (9th Cir., 1997) in support of this argument. There, the Ninth Circuit grappled with the use of the phrase "dumb Mexican," which it characterized as "…an egregious and bigoted insult," that rose above the type of stray remark normally found to be insufficient evidence of discriminatory animus. *Id*. at 1149; *see also Nesbit v. Pepsico Inc.*, 994 F.2d 703, 705 (9th Cir. 1993) (supervisor's comment that "[w]e don't necessarily like grey hair," was weak circumstantial evidence of discriminatory animus on the basis of age, was uttered in ambivalent manner, and was not tied directly to employee's termination).

In reality, House's comment to Gebregzi was exactly the kind of stray remark that does not rise to the level of discriminatory animus. *See Nesbit*, 994 F.2d at 705; *Merrick v. Farmers Ins. Group*, 892 F.2d 1434, 1438 (9th Cir. 1990) (hiring executive's comment that he chose "a bright, intelligent, knowledgeable young man" over appellant was merely stray remark and insufficient by itself to establish age discrimination). As outlined above, the comment comparing the Tigray people to Jewish

6

people during the Holocaust was made in the context of an existing conversation between House and Gebregzi regarding the holocaust. (Plf. Depo, 624:21-625:6.) Nothing about House's comment was inherently "egregious or bigoted," monikers that Gebregzi herself did not use in her own testimony about the comment. Rather, Gebregzi baselessly interpreted the comparison to Jewish people as implying troublemaker status. (*Id*.)

As also outlined above, Gebregzi conflates her political affiliation with a protected characteristic. House's alleged comment regarding Gebregzi's human rights advocacy does not implicate her national origin or ethnic status and thus cannot establish the requisite animus for a discrimination claim.

Much of Gebregzi's circumstantial evidence in support of discrimination is either non-existent or irrelevant to her argument. Gebregzi has not actually offered any evidence showing that Flowers or Vixon weren't disciplined as a result of Gebregzi's complaints. Further, Hoyte's purported past difficulties in wholly different workplaces are irrelevant to whether he discriminated against Gebregzi for her Ethiopian or Tigrayan heritage. Gebregzi offers no connection between Hoyte's past workplace management and any kind of protected characteristic. Finally, that House placed four nurses in a small unit on a PAL in one year, absent any common protected characteristic between those nurses, is not evidence of discrimination, nor is her labeling of Gebregzi as "toxic," (for the reasons discussed above).

Gebregzi simply has not set forth the evidence necessary to show a genuine dispute of material fact. She simply cites her own conclusory allegations, a stray comment, and evidence irrelevant to her claims. As such, the court should grant summary judgment as to her discrimination claim.

### D.    GEBREGZI'S RETALIATION CLAIM IS FACTUALLY DEFICIENT

Gebregzi cannot show a material dispute as to her retaliation claim. She relies heavily on a purported "pattern of antagonism," without evidence, while failing to address multiple interceding patient care complaints throughout her tenure. This lack of evidence, and thus failure to establish a genuine dispute of material fact, is alone fatal to her retaliation claims. Gebregzi also misstates the safe harbor provision of Cal. Code Regs Tit. 2, § 11021(b) as requiring a showing that an employer engaged in 'reasonable enforcement' of a policy, rather than the simple showing that a reasonable policy was being enforced.

7

### 1.    Gebregzi Has Not Shown a "Pattern of Antagonism"

Gebregzi relies partially on *Porter v. California*, 419 F.3d 885 (9th Cir., 2005) for the proposition that a "pattern of antagonism" (i.e. a clear showing that a defendant was targeting a particular employee for retaliation) can give rise to the inference of retaliation. *Porter*, 419 F.3d at 895. Yet the court in *Porter* contemplated specific evidence of clearly targeted behavior alongside a prior finding that plaintiff had been subject to quid pro quo sexual harassment. *Id.* at 895-896. No such compelling evidence exists here.

Gebregzi's argument points to, *inter alia*, a claimed message from the union identifying Gebregzi's PAL placement as a "red flag."[3] Gebregzi notes that this message included a reference to the fact that four nurses had been placed on a PAL in one year. (Opp. 19:20-21.) That more than just Gebregzi were placed on paid administrative leaves implies that Gebregzi was not individually targeted for discipline, undermining her ability to demonstrate an antagonistic pattern.

Gebregzi similarly points to House's alleged comments about "toxicity" and "difficulty." As outlined above, both comments were made specifically to HR and other members of management in the course of attempting to address Gebregzi's workplace conduct. House's testimony also reflects that such comments reflected incidents that took place "throughout [Gebregzi's] tenure," rather than just after Gebregzi began to complain. (House Depo. at 136:1-14.)

Moreover, there were multiple instances of intervening patient complaints, both in 2024 and 2025, which led to investigations and eventual discipline for Gebregzi's conduct. (SS Nos. 58-67.) These patient complaints originated from outside sources and concerned events after Gebregzi's claimed protected activity, including the alleged November 2023 meeting between herself and Hoyte. (Opp. at 6:12-19.)

### 2.    Gebregzi Misstates the Safe Harbor Provision of § 11021(b)

Cal. Code Regs. Tit. 2, § 11021 includes a provision specifically creating safe harbor for employers that are "enforcing reasonable disciplinary policies and practices," and allows employers to demonstrate that the actions of an employee were "either disruptive or otherwise detrimental to

---

[3] This is another example of the infamous "Pl.'s Ex. 42" which does not exist. KFH could not identify any exhibit within Gebregzi's compendium that aligns with the alleged "red flag" message.

327040855v.3

legitimate business so as to justify the denial of an employment benefit." Gebregzi attempts to evade this safe harbor provision by claiming that a jury must decide whether KFH's policies were "enforced reasonably or selectively, and whether the asserted reasons were honest or retaliatory." (Opp. at 20:3-4.) This argument reverses the operative language of § 11021(b), which again, focuses only on whether employers are "enforcing reasonable disciplinary policies and practices," rather than whether the method of enforcement was itself "reasonable."

Gebregzi was involved in five workplace incidents and seven patient complaints – all of which were substantiated – at two facilities with different management staff. (See, Mot. at 3:19-7:26; 8:13-12:3.) Each incident represented serious violations of KFH's policies and were "disruptive [and] detrimental to legitimate business interests," justifying the "denial of an employment benefit." Cal. Code Regs. Tit. 2, Section 11021.

Gebregzi's Opposition fails to adequately establish a genuine dispute of material fact as to the "pattern of antagonism" necessary to support a FEHA retaliation claim. She cites to evidence that undermines her own position and ignores the plethora of patient care complaints against her that were interspersed between her own complaints to management. She also misstates the § 11021(b) safe harbor provision in an attempt to inject a jury interpretation that is not required. As such, her Retaliation claim cannot survive summary judgment.

### E.    GEBREGZI'S WORKPLACE DEFAMATION CLAIM REMAINS UNSUPPORTED

Gebregzi's Opposition cannot raise a triable issue of material fact as to her defamation claims for two simple reasons: she fails to establish that any of the statements made between members of management (and thus subject to the common interest privilege) were made with 'actual malice' and also fails to show how any of the allegedly defamatory statements were published to a third party.

Gebregzi argues that her defamation claim rests on "false accusations made about Gebregzi's professional competence and integrity as a nurse." (Opp. at 20:25-21:4.) She identifies three separate statements that she claims were defamatory in nature: statements in connection with the investigation of her job abandonment on February 27, 2024, statements in connection with the January 13, 2025 medication administration incident, and communications concerning alleged misconduct made to

9

Gebregzi's manager at Kaiser Richmond, Ivy So. However, Gebregzi fails to articulate how such alleged statements meet the essential elements of defamation sufficient to overcome summary judgement.

In essence, Gebregzi argues that the common interest privilege, which protects communications between managers who share a common interest in the evaluation of an employee's misconduct, does not apply in this matter because there is evidence of actual malice. Civ. Code § 47 (privilege includes communications "concerning the job performance" of an employee); *Rudwall v. Blackrock, Inc.*, 289 Fed.Appx. 240, 241 (9th Cir., 2008) ("[s]tatements in a performance review are [privileged unless] they are made with malice"). Actual malice is "hatred or ill will towards the Plaintiff or… lack of reasonable grounds for belief in the truth of the publication," thus showing that a defendant acted in reckless disregard of the plaintiff's rights. *Noel v. River Hills Wilsons, Inc.*, 113 Cal. App. 4th 1353, 1370 (Cal. Ct. App. 2003). As shown below, Gebregzi's evidence does not show malice.

Gebregzi also notes that "the record also indicates statements about Gebregzi's fitness as a nurse communicated during investigations," but does not identify what these alleged additional statements were and fails to cite any evidence in support of these allegations. (Opp. at 21:15-16.) To the extent Gebregzi seeks to avoid summary judgment on the basis of these additionally unnamed communications, the Court should deny her request due to lack of evidence demonstrating a genuine dispute of material facts.

### 1. Statements Regarding the February 27, 2024 Job Abandonment Incident are True and Were Not Published, and Thus Cannot Qualify as Defamation

On February 27, 2024, Gebregzi left work shortly after beginning a scheduled shift. (SS No. 33.) This violated KFH's employee time and attendance policy. (SS No. 32.) The departure was investigated and substantiated, resulting in Gebregzi receiving a one-day suspension. (SS No. 55.) Gebregzi claims that the accusation of job abandonment is defamatory because she had told other members of management about her decision to leave shortly before her departure. (Opp. at 21:12-14.) Crucially, Gebregzi *admits* to departing her shift early in her Opposition and does not claim that she received approval from House to do so. (Id.) Instead, she contends that she spoke with another manager, Harold Falcasantos, and informed him that she was leaving. (Opp. at 7:24-8:5.)

Truth is an absolute defense to a defamation claim, even if the truthful statement is told in bad

faith or with malicious purpose. *See, e.g. Campanelli v. Regents of University of California*, 44 Cal. App. 4th 572, 581-582 (Cal. Ct. App. 1996); *Petersen v. Apple Computer, Inc.*, C 04–0405PJH, 2005 U.S. Dist. LEXIS 49722 at *59-60 (N.D. Cal. Sep. 19, 2005). Even assuming House accused Gebregzi of job abandonment "maliciously" (she did not) Gebregzi's own admission to abandoning her position renders the issue moot. Moreover, the statement at issue was never published to a third party – only to other nurses and members of KFH management. Without such publication, Gebregzi's defamation claim fails as a matter of law. *See Dible v. Haight Ashbury Free Clinics, Inc.*, 170 Cal.App.4th 843, 851 (Cal. Ct. App., 2009) (no defamation action for a statement that might be made in the future.)

**2.    Communications Concerning The June 13, 2025 Medication Administration Incident Do Not Qualify As Defamation**

Gebregzi argues that the allegations against her stemming from the January 13, 2025 medication administration incident are "materially disputed." Even assuming her allegations are accurate, they are not sufficient evidence of malice, including by Gebregzi's own definition. Gebregzi must show that there was a "lack of reasonable grounds for belief in the truth of the publication." *Noel*, 113 Cal. App. at 1370.

House testified that she was approached by the attending anesthesiologist regarding the incident. The anesthesiologist informed House that Gebregzi unilaterally split the dosage. (SS No. 76.) House further testified that anesthesiologist also expressed her view that Gebregzi should not care for patients. (Id.) KFH scheduled an investigative interview with Gebregzi and her union representative for June 27, 2025, but Gebregzi did not attend. (SS No. 78) Based on its investigation, KFH substantiated the allegations from January 13, 2025, among other complaints. (SS no. 79.) In other words, House had clear reason to believe the allegations were true and no evidence showing that they were not – far below the threshold necessary for Gebregzi to establish actual malice. *Noel*, 113 Cal. App. at 1370.

Gebregzi attempts to attack the sufficiency of the investigation by pointing to House not interviewing the infant's mother, not making a determination as to whether the infant remained stable before reporting the incident, and not disciplining another nurse for pulling the medication that was split. These points are red herrings. What was at issue was whether Gebregzi failed to follow proper soothing protocols and improperly administered two half-doses of morphine when a full dose was ordered. An

11

interview of the mother and discipline of the other involved nurse for pulling the medication has no bearing on the sufficiency of the investigation into the claims against Gebregzi. As with the February 27, 2024 job abandonment incident, Gebregzi's Opposition provides no evidence of third party publication as to the June 13, 2025 medication administration incident, a necessary element of any defamation claim. *See Dible*, 170 Cal. App. 4th at 851. She thus fails to establish a genuine dispute of material fact as to these elements of her defamation claim.

### 3. Alleged Defamatory Statements to Ivy So, Regional HR Investigators, and Through the Termination-Review Process Do Not Constitute Third-Party Publications

Gebregzi's remaining argument regarding third party publication fails to identify a third party, meaning there is no triable issue of material fact, rendering summary judgment appropriate. Gebregzi attempts to argue that Richmond director Ivy So was "outside the Oakland management chain," and was thus a third party for the purposes of proving publication. (Opp. at 21:7-22.) Despite Gebregzi's attempt to characterize her otherwise, So is indeed a manager in the employ of KFH. (*See* SS No. 70.) Communications between So and Jefferson, House, or Hoyte regarding personnel matters would be protected by the common interest privilege. *See Bierbower v. FHP, Inc.*, 70 Cal. App. 4th 1, 3-4 (1999) (internal documents concerning sexual harassment investigation were subject to common interest privilege).

Gebregzi also fails to identify the allegedly defamatory statements or provide evidence of their having been made. Ultimately, Gebregzi's defamation claim cannot survive summary judgment because there were no defamatory statements; only internal communications between members of management clearly protected by the common interest privilege.

### F. GEBREGZI'S BREACH OF CONTRACT ARGUMENT NECESSARILY IMPLICATES THE CBA, SHOWING WHY PREEMPTION UNDER LMRA § 301 IS APPROPRIATE

In arguing for her breach of contract claims, Gebregzi raises both a moot argument concerning her FEHA claims and a self-contradictory argument concerning § 301 of the Labor Management Relations Act. Gebregzi first insists that § 301 cannot preempt her FEHA claims. KFH never argued that it could, rendering the point moot. She then admits that her breach of contract claim is based on KFH's

12

failure to follow its own CBA. This means a jury would have to analyze what aspects of KFH's CBA it purportedly failed to follow, the exact inquiry preempted under Section 301. *See Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997 (9th Cir. 1987) ("[The preemptive force of Section 301] is so powerful as to displace […] any state claim whose outcome depends on analysis of the terms of the agreement.")

For example, Gebregzi points to the alleged failure to provide a union representative upon her request that one be provided during the June 16, 2025 administrative leave meeting. Yet, Gebregzi makes no clear showing that the CBA requires the presence of a union representative during meetings in which a paid administrative leave is being administered. There is certainly no independent state-law right to a union representative at a paid administrative leave meeting, meaning any such right would necessarily stem from the CBA. The right to union representation, just-cause procedures, and progressive discipline for KFH employees exists *solely* because of the CBA to which KFH is a party.

Gebregzi's attempts to sidestep this issue by arguing that there are no "ambiguous CBA terms" to interpret, but rather that a factfinder must "decide what occurred and whether KFH honored its own procedures." (Opp. at 23:19-23 (citation omitted).)[4] Resolving whether KFH "honored its own procedures" requires the factfinder to determine what procedures the CBA required — the exact interpretive exercise § 301 forecloses.

### G. GEBREGZI ATTEMPTS TO CONVERT INADEQUATE PLEADINGS INTO ENTIRELY NEW CLAIMS WITHOUT PROPER NOTICE

Gebregzi argues, in three separate instances, that she should be allowed to impute entirely new claims for FEHA retaliation, wrongful termination, and punitive damages to her complaint despite having failed entirely to plead such claims. (Opp. at 18:2-8; 22:9-14; 24:1-10.) The court should deny Gebregzi's request.

The Federal Rules of Civil Procedure govern the sufficiency of a pleading in federal actions, including those based on diversity jurisdiction. *See, e.g. Harris v. Rand*, 682 F.3d 846, 850 (9th Cir. 2012). Pursuant to FRCP 8(a)(2), a complaint is sufficient only if it gives the defendant "fair notice of what the… claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

---

[4] Gebregzi provides the wrong citation to *Detabali v. St. Luke's Hospital*, 482 F.3d 1199 (9th Cir., 2007) for this proposition.

13

545 (2007); *see also, Ashcroft v. Iqbal*, 556 U.S. 662, 680-681 (legal conclusions insufficient to support claims in a pleading). Gebregzi's FAC contains no allegations necessary to raise the claims she now seeks to add. In failing to include such allegations, Gebregzi failed to put KFH on notice that they were at issue, leaving it without the opportunity to properly raise defenses and conduct discovery.

Recognizing the inadequacy of her pleadings, Gebregzi attempted to amend her FAC three times to include the missing claims. (See Dkts 28-29; 33; 35; 50-53.) Further, four weeks ago, Gebregzi filed a new state court complaint that raises all of the causes of action which she attempted to add through these amendments. (See Dkts. 57, 58.)

### 1.    Gebregzi's Alleged FEHA Retaliation Claims

Gebregzi claims that she properly articulated a cause of action for FEHA retaliation pursuant to the allegation in her FAC that she was "retaliated against by Respondent on multiple occasions after [she] made reports to appropriate personnel at her workplace about safety conditions…" (Opp. 18:2-9; see also, Dkt. 1-1, A at ¶ 18.) This statement is insufficient to infer a claim for FEHA retaliation, as Gebregzi's bare claim that she was "retaliated against" is a legal conclusion. *See Iqbal*, 556 U.S. at 680-681 (legal conclusions insufficient to support claims in pleadings.)

Gebregzi's sole allegation to support retaliation in this instance is the claim that she was placed on a paid suspension. (See, Dkt. 1-1, A at ¶ 5.) Paid suspension pending an investigation is not itself an adverse employment action. *Gannon v. Potter*, 2006 WL 3422215, at *4-5 (N.D. Cal. Nov. 28, 2006), aff'd, 298 F. App'x 623 (9th Cir. 2008) ("Defendant argues that placing Gannon on paid administrative leave during the course of the investigation does not constitute an adverse employment action. . . . Persuasive authority supports Defendant's argument.").

### 2.    Gebregzi's Alleged Wrongful Termination Claim

Gebregzi claims that her fifth and sixth causes of action for "constructive termination" and "constructive discharge," should survive "to the extent they are read as alleging wrongful termination in violation of public policy." (Opp. at 22:10-14.) Doing so would require the court to willfully ignore the notice pleading standard articulated in FRCP 8(a)(2), *Twombly* and *Iqbal*.

Even if the court were to permit Gebregzi's alleged wrongful termination claim, it would be

14

derivative of her FEHA claims and thus fail for the same reasons. *See Hanson v. Lucky Stores, Inc.*, 74 Cal. App. 4th 215, 229 (Cal Ct. App., 1999) ("Because [the] FEHA claim fails, his claim for wrongful termination in violation of public policy fails."); *Siazon v. Hertz Corp.*, No. 17-cv-05935-EMC, 2019 WL 1170778 at \*18 (N.D. Cal. 2019) (granting summary adjudication on wrongful termination claim as derivative of failed Section 1102.5 claim).

### 3.    Gebregzi's Purported Punitive Damages Claim

Gebregzi claims that if the Court denies summary judgment then the parties may "address punitive damages as appropriate at trial or through subsequent proceedings." She cannot have it both ways - she has failed to address punitive damages in her pleading and therefore cannot raise the issue later. FRCP 8(a)(3) is clear that a pleading that states a claim for relief must contain "a demand for the relief sought." No such claim appears in Gebregzi's FAC. (Dkt. 1-1, Ex. A.)

Even assuming Gebregzi was permitted to raise a punitive damages claim, such a claim would not survive. Gebregzi identifies no officer, director, or managing agent who undertook an act of oppression, fraud, malice, per Civ. Code § 3294(b). House, Hoyte, Jefferson, and the accused coworkers (Ayalew and Vixon) are not managing agents, and Gebregzi has identified no other individuals who fulfill that role. Furthermore, Gebregzi has made no showing of malice, oppression, or fraud necessary to support a punitive damages claim. (*See* Mot. at 22:27-23:15.)

Gebregzi's newly-raised claims lack the most basic notice necessary under the Federal Rules of Civil Procedure. Her failure to provide any evidence whatsoever further underscores her failure to establish a genuine dispute of material fact necessary to survive summary judgment.

## III.    CONCLUSION

For all of these reasons, and those set forth in its moving papers, KFH respectfully requests that the Court grant its Motion for Summary Judgment or, in the Alternative, Summary Adjudication of Plaintiff's causes of action.

KFH'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, SUMMARY ADJUDICATION

327040855v.3

DATED: July 9, 2026                                    SEYFARTH SHAW LLP

                                                       By: */s/ James Sobolov*
                                                           Christian J. Rowley
                                                           G. Daniel Newland
                                                           Tara R. Mirchandani
                                                           James Sobolov

                                                       Attorneys for Defendant KAISER
                                                       FOUNDATION HOSPITALS (improperly
                                                       named as KAISER FOUNDATION
                                                       HOSPITAL D/B/A KAISER PERMANENTE
                                                       OAKLAND MEDICAL CENTER

16

327040855v.3