UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HANNA GEBREGZI,<br>Plaintiff,<br>v.<br>KAISER FOUNDATION HOSPITALS, et al.,<br>Defendants. | Case No. 24-cv-06322-JSW<br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br>Re: Dkt. No. 54 |

This matter comes before the Court upon consideration of the motion for summary judgment filed by Defendant Kaiser Foundation Hospitals ("Kaiser"). The Court has considered the parties' papers, relevant legal authority, the record in this case, and the parties' oral argument. The Court HEREBY GRANTS the motion for summary judgment.

## BACKGROUND

Plaintiff Hanna Gebregzi, who is Black and of Ethiopian descent, began working for Kaiser as a nurse in July 2016. Throughout her employment with Kaiser, she was represented by the California Nurses Association (the "Union"). (Dkt. No. 56-1, Declaration of Dylan Hackett ("Hackett Decl."), Ex. 39, Deposition of Hanna Gebregzi Vol. I at 73:24-74:1, 74:16-19, 92;13-17.) In May of 2022, Gebregzi began working in the Post-Anesthesia Care Unit at Kaiser's Oakland facility as a Staff Nurse II. House, Hoyte, Jefferson, and Smith supervised Gebregzi

United States District Court
Northern District of California

United States District Court
Northern District of California

during her tenure at the Oakland facility. (*Id.* at 91:5-7, 92:22-25, 139:24-140:7.)

In addition to her work at Kaiser, Gebregzi works as a human rights advocate on issues affecting the Tigray region of Ethiopia. (*Id.* at 9:19-22, 349:12-350:1, 351:17-22.) She helps run a YouTube channel known as "Horizon Free Media," which she uses as a platform to speak about Ethiopian human rights and political issues. (*Id.*)

According to Gebregzi, in 2022, House asked her about the war in the Tigray region and then talked about the Holocaust and genocide. House then said something like "so you guys are the black Jews," laughed, and said she was joking. (Hackett Decl., Ex. 41, Gebregzi Depo. Vol. III at 624:12-625:10.) Gebregzi interpreted this comment as "[l]ike a troublemaker kind of thing." (*Id.* at 625:4.) House also testified that she had referred to Gebregzi as toxic, difficult, and disrespectful in emails to her boss and to individuals in Human Resources. She also testified that because there were a number of incidents involving Gebregzi, she could have sent emails using that language after Gebregzi filed complaints against her. (Solokov Decl., Ex. R, House Depo. at 151:2-15; Dkt. No. 65-1, Plaintiff's Supp. Compendium of Evidence, Ex. 44 (House Depo. at 133:6-10, 135:2-136:16).)

Gebregzi also contends that on February 12, 2024, one of her co-workers told her another nurse, Yeshamu Ayalew, wanted to speak with her. Although Gebregzi stated she did not feel safe, she went with others to the meeting, where Ayalew accused Gebregzi of harassing her. During the confrontation, Gebregzi told Ayalew she was a "serial liar" and accused her of killing her own sister and brother-in-law. (Sokolov Decl., Ex. B, Gebregzi Depo. II at 377:11-17, 378:24-379:13, 358:17-359:5.) Ayalew denied the accusation and then walked out. (*Id.* at 356:7-357:17).) Ayelew, Gebregzi, and another Kaiser nurse also met to discuss their issues. Ayalew provided a recording of the incident to House when she submitted a complaint about Gebregzi. It is undisputed that Kaiser disciplined Ayalew for recording the incident without Gebregzi's knowledge. (*Id.* at Ex. R (House Depo. at 74:16-75:11, 75:21-76:1, 139:13-:140:25, 141:4-10, 141:22-142:7.)

Gebregzi also claims that on February 13, 2024, an unidentified Kaiser employee accessed her email and forwarded a confidential email Gebregzi had drafted containing complaints she had

raised previously to House and Smith. According to Gebregzi, a printed copy of the email was left in a breakroom and was forwarded to Hoyte on February 14, 2024. (*Id.* at Ex. B, Gebregzi Depo. II at 311:8-313:9, 333:5-14.) Gebregzi reported these incidents to management, but an investigation into the email access allegation could not substantiate Plaintiff's claims. (*Id.* at 338:1-13; Ex. 17.)

Gebregzi also contends that on February 27, 2024, House confronted and verbally attacked her at the nursing station. Because she felt unsafe, Gebregzi left work. Before she departed, she mentioned her discomfort to House and reported the incident to Falcasantos and his assistant manager. (*Id.* at 389:3-15, 391:25-392:3.) She did not ask House for permission to leave early. (House Depo. at 70:2-5.)

Kaiser placed Gebregzi on paid administrative leave from March 7, 2024, through December 5, 2024. (*See, e.g.,* Hacket Decl., Ex. 39, Gebregzi Depo. Vol. I at 106:7-13.) The administrative leave was pending an investigation of workplace harassment and job abandonment, made in consultation with the Human Resources Department and the executive team. (*Id.* at 425:2-14, 426:22-427:14, 429:11-17; Hoyte Depo. at 72:12-15.) On March 27, 2024, Senior Human Resource investigator Helen Yoon met with Gebregzi to discuss her verbal altercation with Ayalew and her email hacking claim. (*Id.* at 387:23-388:11.) During this meeting, Gebregzi accused Ayalew of being an operative of the Ethiopian government and posited that a statement Ayalew provided was prepared by an Ethiopian politician. (*Id.* at 348:15-25, 352:3-354:17.)

Upon completion of her investigation, on December 4, 2024, Yoon issued two closure letters summarizing her findings. (*Id.* at 338:1-13, Exs. 16, 17, 19.) Yoon reported that she was unable to substantiate any of Gebregzi's allegations, including claims related to Ayalew's conduct, the alleged unauthorized access to Plaintiff's personal email, and her broader claims of retaliation and hostile work environment. (*Id.* at Ex. 17.) In her second letter, Yoon substantiated multiple complaints concerning Gebregzi, including speaking disrespectfully to Ayalew, accusing her of "metaphorically" killing her own brother-in-law, and leaving work early in violation of Kaiser's time and attendance policy. (*Id.* Gebregzi Depo. at 383:7-384:25, 430:19-432:23; Ex. 22.) Based on the substantiated findings from Yoon's investigation, Gebregzi received a one-day suspension

on December 2, 2024. (*Id.* at 430:19-432:23; Exs. 19, 22.)

Also on December 2, 2024, Gebregzi received a verbal warning related to four independent patient care complaints submitted between December 2023 and March 2024. (*Id.* at 393:14-23; House Decl. at ¶¶ 6-8, 11.) Two of the four patient care complaints were submitted directly by patients or their families through member services, while the other two were reported to Kaiser staff directly by members. (*Id.* at Ex. 20; Declaration of Tiffany Vandevoir at ¶ 8; House Decl. at ¶¶ 7, 8, 11.) The first patient complaint alleged that Gebregzi handled a patient roughly, allowed an oxygen alarm to sound for a prolonged period of time, and failed to take the patient to the bathroom promptly. (*Id.* at 395:9-396:16; Ex. 20; House Decl. at ¶ 8.) The second patient complaint alleged that Gebregzi treated a patient "worse than an animal," refused to help her walk, dismissed her complaints of pain, and insisted that she was ready to go home. (*Id.* at 398:2-399:2; Ex. 20; House Decl. at ¶ 8.) The third patient complaint reported by a Kaiser employee on behalf of a patient alleged that Gebregzi failed to document low blood pressure readings and a bloody chest tube drainage, causing the patient's return to surgery. (*Id.* at 401:9-402:24; Ex. 20; House Decl. at ¶ 11.) The fourth patient complaint alleged that Gebregzi handled a patient roughly and rudely and dismissively insisted on discharge contrary to the patient's daughter's assessment. (*Id.* at 407:2-408:13; Ex. 20; House Decl. at ¶ 7.)

During her two-month stint at the Richmond facility, Gebregzi was the subject of three additional separate patient care complaints. (*Id.* at 489:12-8; Ex. 25, Vandevoir Decl. at ¶¶ 5-7.) The first complaint alleged that Gebregzi was unable to explain how to program a take-home pain pump. (*Id.* at 494:11-495:13; 495:22-496:18, 497:8-17; Ex. 25.) The second Richmond complaint reported that Gebregzi had rushed a patient to use the bathroom, was dismissive of the patient's pain, and discharged the patient without urination. (*Id.* at 499:12-501:11; Ex. 25.) The third complaint at Richmond, a patient alleged that Gebregzi tried to force the patient to leave the recovery room while still in pain, causing the patient to have a panic attack, and requiring another nurse to relieve Gebregzi of the patient assignment. (*Id.* at 501:12-22; Ex. 25.) In June 2025, Kaiser investigated the Richmond complaints and found them substantiated. (*Id.* at Ex 25.) The investigation resulted in a written warning. (*Id.* at 489:19-490:17; Ex. 25.)

Gebregzi also was cited for discussing a patient's medical information in violation of the confidentiality policy. (*Id.* at 168:6-169:12.) She was against cited for failing to follow instructions on caring for an infant patient by exposing the surgical incision and failing to follow calming protocols. (*Id.* at 594:13-24, 595:10-24; Ex. 27; House Depo. at 90:3-18.) Then, in June 2025, Gebregzi was cited for disregarding the doctor's medication order by administering a morphine dose in two separate increments instead of the prescribed full dose and failing to document her actions. (*Id.* at 602:13-603:8, 604:24-25; Ex. 27; House Depo. at 90:3-91:13.) Following another investigation of these incidents, Kaiser substantiated them and on August 27, 2025, House issued a notice of termination. (*Id.* at Ex. 26.)

The Court will address additional facts as necessary in its analysis.

## ANALYSIS

### A. Applicable Legal Standard.

"A party may move for summary judgment, identifying each claim or defense … on which summary judgment is sought." Fed. R. Civ. P. 56(a). A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment, or partial summary judgment, is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court may not weigh evidence or make determinations of credibility. Rather, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *see also* Fed. R. Civ. P. 56(c).

An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson*, 477 U.S. at 248-49. A fact is "material" if it may affect the outcome of the case. *Id.* at 248. If the party moving for summary judgment does not have the ultimate burden of persuasion at trial, that party must produce evidence which either negates an essential element of the non-moving party's claims or shows that the non-moving party

United States District Court
Northern District of California

does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

Once the moving party meets its initial burden, the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). "A mere scintilla of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some significant probative evidence tending to support the complaint." *Summers v. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997) (cleaned up). If the non-moving party fails to point to evidence precluding summary judgment, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

**B. Amend/Supplement Allegations.**

"The issues on summary judgment are framed by the complaint. Indeed, the issues in the complaint guide the parties during discovery and put the defendant on notice of what evidence is necessary to defend against the allegations. For these reasons, a plaintiff cannot oppose summary judgment based on a new theory of liability because it would essentially blind side the defendant with a new legal issue after the bulk of discovery has likely been completed." *Ortiz v. Lopez*, 688 F. Supp. 2d 1072, 1082 (E.D. Cal. 2010) (citing *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292-93 (9th Cir. 2000)).

**C. Kaiser is Entitled to Judgment on the Breach of Contract Claim.**

Kaiser argues Gebregzi's breach of contract claim because it is preempted under Section 301 of the Labor Management Relations Act. The only contract Gebregzi identifies is the CBA and argues that Kaiser "to follow its own CBA procedures and basic protections." (FAC ¶¶ 28-29; Opp. at 23:9-10.) Gebregzi does not dispute that she was covered by the CBA and does not dispute that she had access to its grievance process. *See, e.g., Young v. Anthony's Fish Grotto's, Inc.*, 830 F.2d 993, 997 (9th Cir. 1997) ("A suit for breach of a collective bargaining agreement is governed exclusively by federal law under section 301."); *Price v. Georgia-Pacific Corp.*, 99 F. Supp. 2d 1162, 1166 (N.D. Cal. 2000) ("[A]n employee in a position with access to a CBA-sanctioned grievance procedure cannot state an individual claim for breach of contract under state

law. Such a claim is necessarily preempted by section 301.”).

The Court GRANTS Kaiser’s motion for summary judgment on the breach of contract claim.

**D. Kaiser Is Entitled to Judgment on the Harassment Claim.**

Gebregzi alleges that she was harassed because of her race, ethnicity, and national origin. To prevail, Gebregzi “must show she was subjected to harassing conduct that was (1) unwelcome; (2) because of race, [ethnicity, or national origin]; and (3) sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment.” *Bailey v. San Francisco Dist. Atty’s Office*, 16 Cal. 5th 611, 627 (2024). In general, occasional, isolated, or sporadic comments will not be actionable. *Id.* “The working environment must be evaluated in light of the totality of the circumstances.” *Miller v. Dep’t of Corrections*, 36 Cal. 4th 446, 462 (2005) (citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993)). “‘These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee’s work performance.’” *Id.* “The required level of severity or seriousness varies inversely with the pervasiveness or frequency of the conduct.” *Reynaga v. Roseburg Forest Products*, 847 F.3d 678, 687 (9th Cir. 2017). “‘[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious)’” are not sufficient to create an actionable claim of harassment. *Id.* (quoting *Faragher v. Boca Raton*, 524 U.S. 775, 788 (1998)). Isolated, stray, or trivial remarks are insufficient; rather, a plaintiff must show a concerted pattern of severe or pervasive harassment. *Aguilar v Avis Rent A Car Sys., Inc.*, 21 Cal. 4th 121, 146 (1999).

Even taking as true the totality of the allegations made by Plaintiff, there is still no evidence of harassment on the basis of her race or national origin. The single reference to her nationality, House likening her Ethiopian heritage to Jews in the Holocaust, was not derogatory or discriminatory. Even if the comment was somehow interpreted to be discriminatory, it was an isolated instance without consequence. The other instances in February 2024 Gebregzi alleges regarding her interaction with Ayalew, her alleged email hacking, and her leaving a shift early without permission because she felt distressed do not amount to harassment based on her race or

United States District Court
Northern District of California

nationality. Further, these instances were thoroughly investigated and none were found to have been substantiated. The undisputed record establishes that Gebregzi was not acting competently based on multiple patient care complaints and workplace incidents and there is no evidence that management's treatment of her was discriminatory due to her race.

The Court GRANTS Kaiser's motion for summary judgment on the harassment claim.

**E. Kaiser Is Entitled to Judgment on the Discrimination Claim.**

To prevail on her discrimination claim, Gebregzi is required to show: (1) she belongs to a statutorily protected class; (2) she was performing satisfactorily; (3) she suffered an adverse employment action; and (4) similarly situated individuals not in the protected class were treated more favorably. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993); *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 355 (2000). The first and third elements are not in dispute.[1]

The Court applies the familiar burden-shifting scheme set out in *McDonnell Douglas Corp. v. Green* to analyze Gebregzi's disparate treatment claim. 411 U.S. 792, 802 (1973); *see also Guz*, 24 Cal. 4th at 354. First, Gebregzi must establish a prima facie case of discrimination. That burden is "minimal and does not even need to rise to the level of a preponderance of the evidence." *Lyons v. England*, 307 F.3d 1092, 1112 (9th Cir. 2002) (quoting *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994)). If Gebregzi succeeds in establishing a prima facie case, the burden of production shifts to Kaiser to articulate a legitimate, nondiscriminatory reason for the adverse action. *See McDonnell Douglas*, 411 U.S. at 802; *Guz*, 24 Cal. 4th at 355.

If Kaiser articulates a legitimate non-discriminatory reason for the adverse employment action, Gebregzi must demonstrate that the County's articulated reason is a pretext for unlawful discrimination by "either directly persuading the court that a discriminatory reason more likely motivated [Kaiser] or indirectly by showing that [Kaiser's] proffered explanation is unworthy of

---

[1] Kaiser assumed that Gebregzi suffered an adverse employment action, because she was terminated. However, Gebregzi was terminated in August 2025. As it stands, the First Amended Complaint does not include allegations about her termination, and she did not pursue her effort to amend the complaint to include her termination. Therefore, the Court will not consider termination as an adverse employment action. The Court will consider the instances of temporary leave adverse employment actions for the purposes of this claim.

credence." *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)). Gebregzi's evidence must be both specific and substantial to overcome the legitimate reasons set forth by Kaiser. *See Aragon v. Republic Silver State Disposal, Inc.*, 292 F.3d 654, 659 (9th Cir. 2002).

Here, Gebregzi is unable to proffer evidence to establish a prima facie case of discrimination. With the exception of the stray comment, none of the instances she complains of centered around her identification in a statutorily protected class. Even if Gebregzi were able to establish a prima facie case of discrimination, Kaiser has a plentiful record of legitimate, non-discriminatory reasons for the adverse employment actions of placing Plaintiff on temporary administrative leave. There were seven documented instances of independent reporting from patients concerning Gebregzi's poor performance and five separate workplace incidents requiring discipline. The patient complaints ranged in time and placement, with different supervisors and personnel. There is no evidence to overcome the record rife with examples of legitimate non-discriminatory reasons for her progressive discipline (and eventual termination).

The Court GRANTS Kaiser's motion for summary judgment on the discrimination claim.

**F. Kaiser Is Entitled to Judgment on the Retaliation Claim.**

Gebregzi alleged Kaiser retaliated against her in violation of California Labor Code "section 11021," which she alleges makes it "unlawful for an employer to demote, suspend, or otherwise deny any employment benefit to an individual because they have opposed practices prohibited by the Act or participated in related proceedings." It is undisputed this section is a regulation in the Labor Code and does not create a private right of action. It also is undisputed that FEHA prohibits retaliation on that basis. Cal. Gov. Code § 12940(h). Further, the provisions of the California Code of Regulations governing employment discrimination contain Section 11021, which also proscribes such conduct. 2 Cal. Code Regs. § 11021(a).[2]

[2] Gebregzi alleges she was retaliated against after she "made reports to appropriate personnel at her workplace about safety conditions at the workplace." (FAC ¶ 18.) By its terms, FEHA does not preclude retaliation for reporting on safety conditions. *See* Cal. Gov. Code § 12940(a); *see also Sustrick v. CI Capital Partners, LLC*, 2025 WL 2597404, at *6 (N.D. Cal. Jan. 7, 2025) (dismissing FEHA retaliation claim based on retaliation for complaining about accounting practices); *Van Osten v. Home Depot, U.S.A., Inc.*, 2021 WL 3913483, at *8 (S.D. Cal. Aug. 27, 2021) (finding complaints about safety procedures did not constitute protected activity under FEHA). Those allegations might support a retaliation claim under California Labor Code section

Section 11021(b) provides that

> [n]othing in the regulations shall be construed to prevent an employer … from enforcing reasonable disciplinary policies and practices, not from demonstrating that the actions of … an employee were either disruptive or otherwise detrimental to legitimate business interests so as to justify the denial of an employment benefit.

Gebregzi's conduct falls within this safe harbor as over the course of her employment at two facilities with different management staff, Plaintiff received seven patient complaints and was involved in five different workplace incidents, all of which were independently substantiated after thorough review. These incidents and complaints represented serious violations of Kaiser's policies and were "disruptive [and] detrimental to legitimate business interests," thereby justifying the "denial of an employment benefit." Cal. Code Regs. § 11021(b). Even assuming there could be a private right of action under the regulations Plaintiff cites, her discipline and eventual termination resulted from proper enforcement of Kaiser's policies and her claim of retaliation fails as a matter of law.

The Court GRANTS Kaiser's motion for summary judgment on the retaliation claim.

**G. Kaiser is Entitled to Judgment on the Defamation Claim.**

To succeed on her claim for defamation, Gebregzi must show that Kaiser made "a false and unprivileged publication" that exposed her "to hatred, contempt, ridicule, or obloquy, or which causes [her] to be shunned or avoided, or which has a tendency to injury [her] in [her] occupation." *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1048 (Cal. Ct. App. 2008). This claim fails because the statements at issue are protected by the common interest privilege and because there was no publication to a third party.

California Civil Code section 47(c) creates the common interest privilege for managerial communication. Communications protected by the privilege include those by managers who share a common interest in the evaluation of an employee's misconduct, the investigation of it, and the consequence of that misconduct. A manager's communications to another manager or employee within the employer's business are privileged, even if disparaging. *See e.g., Deaile v. General Tel.*

---

1102.5, but Gebregzi does not assert a whistleblower claim in this case and does not rely on Section 1102.5 to oppose Kaiser's motion.

*Co.*, 40 Cal. App. 3d 841, 846 (Cal. Ct. App. 1974) (common interest privilege applied where all recipients of allegedly libelous communications are in the employ and worked in the same facility in which plaintiff had worked or were plaintiff's supervisors). The investigations into Gebregzi's conduct and the reporting of such conduct clearly fall within the parameters of the common interest privilege and therefore cannot form the basis of a defamation claim. Gebregzi argues that the privilege is conditional and protects only non-malicious communications. Here, there is no evidence provided of actual malice.

Secondly, the alleged defamatory statements here were not published to any third party but, rather, were made by Kaiser personnel to other Kaiser personnel. Because there was no publication of the allegedly defamatory statements, the claim independently fails for this reason as a matter of law. *See Dible v. Haight Ashbury Free Clinics, Inc.*, 170 Cal. App. 4th 843, 851 (Cal. Ct. App. 2009).

The Court GRANTS Kaiser's motion for summary judgment on the defamation claim.

**H. Kaiser Is Entitled to Judgment on the Constructive Discharge Claims.**

Gebregzi brought two claims for constructive discharge and constructive termination, "which occur[] only when an employer terminates employment by forcing the employee to resign." *Mullins v. Rockwell Int'l Corp.*, 15 Cal. 4th 731, 737 (1997). It is undisputed that when Gebregzi filed the First Amended Complaint, she still worked for Kaiser. At the hearing on the motion, Plaintiff conceded that Kaiser is entitled to judgment on this claim. If Plaintiff had properly articulated a wrongful termination in violation of public policy claim, it would have been derivative of her discrimination and retaliation claims and would fail for the same reasons those claims fail. *See, e.g., Hanson v. Lucky Stores, Inc.*, 74 Cal. App. 4th 215, 229 (Cal. Ct. Appl. 1999) ("[B]ecause [the] FEHA claim fails, his claim for wrongful termination in violation of public policy fails.").

The Court GRANTS Kaiser's motion for summary judgment on the constructive discharge claims.

///

///

United States District Court
Northern District of California

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Kaiser's motion for summary judgment on all causes of action. A separate judgment shall issue and the Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: November 20, 2026

JEFFREY S. WHITE
United States District Judge